# Exhibit G

IN THE CIRCUIT COURT OF THE 17TH
JUDICIAL CIRCUIT IN AND FOR BROWARD
COUNTY, FLORIDA

CASE NO.: CACE-22-016281

SHAWNA SPANEL, as mother and natural
guardian of her minor son, H.S.,

      Plaintiffs,

vs.

AHL ASSETS LLC, a For-Profit Florida
Limited Liability Company,
HOMEAWAY.COM, INC., d/b/a
VRBO.COM, a For-Profit Foreign
Corporation, GENERALI – UNITED
STATES BRANCH, a For-Profit
Foreign Corporation, and MOUNT
VERNON FIRE INSURANCE
COMPANY, a For-Profit Foreign
Corporation,

      Defendants.

_____/

## **AMENDED COMPLAINT**

The Plaintiffs, SHAWNA SPANEL, as mother and natural guardian of her minor son, H.S.,

by and through the undersigned counsel, sues the Defendants, AHL ASSETS LLC, a For-Profit

Florida Limited Liability Company, HOMEAWAY.COM, INC., d/b/a VRBO.COM, a For-Profit

Foreign Corporation ("VRBO"), GENERALI – UNITED STATES BRANCH, a For-Profit

Foreign Corporation ("GENERALI INSURANCE"), and MOUNT VERNON FIRE

INSURANCE COMPANY, a For-Profit Foreign Corporation ("MOUNT VERNON

INSURANCE"), and in support thereof alleges:

1.     This is an action for damages in excess of thirty thousand ($30,000.00) dollars.

2.     At all times material hereto, the Plaintiff, SHAWNA SPANEL, as mother and natural

guardian of her minor son, H.S., is sui juris.

*** FILED: BROWARD COUNTY, FL BRENDA D. FORMAN, CLERK 12/29/2022 02:26:47 PM.****

3.  At all times material hereto, Defendant, GENERALI INSURANCE, was a Foreign For-Profit Corporation and was authorized to conduct and did conduct business in Broward County, Florida.

4.  At all times material hereto, Defendant, MOUNT VERNON INSURANCE, was a Foreign For-Profit Corporation and was authorized to conduct and did conduct business in Broward County, Florida.

5.  At all times material hereto, Defendant, HOMEAWAY.COM, INC., d/b/a VRBO.COM, was a For-Profit Foreign Corporation and was authorized to conduct and did conduct business in Broward County, Florida.

6.  At all times material hereto, Defendant, AHL ASSETS LLC, was a For-Profit Florida Limited Liability Company that owned the property where H.S. tripped and fell.

7.  At all times material hereto, Defendant, AHL ASSETS LLC, operated the property where H.S. tripped and fell.

8.  At all times material hereto, Defendant, AHL ASSETS LLC, managed the property where H.S. tripped and fell.

9.  At all times material hereto, Defendant, AHL ASSETS LLC, maintained the property where H.S. tripped and fell.

10. At all times material hereto, Defendant, AHL ASSETS LLC, supervised the personnel maintaining the property where H.S. tripped and fell.

11. At all times material hereto, Defendant, AHL ASSETS LLC, controlled the property where H.S. tripped and fell.

12. Venue is proper Broward County, Florida because the incident occurred in Broward County.

SHAKED LAW FIRM, P.A.
20900 NE 30TH AVE, SUITE 715, MIAMI, FL 33180 ● TEL.: (305) 937-0191 ● FAX: (305) 937-0193

## STATEMENT OF FACTS

13.   Sometime before January 15, 2022, Defendant, AHL ASSETS LLC, marketed a property he owned located at 715 Hollywood Boulevard, Hollywood, Florida, 33019 ("subject short-term vacation property"), on Defendant, VRBO's, online short-term home rental marketplace.

14.   Defendants, AHL ASSETS LLC and VRBO, marketed, represented, promised, warranted, guaranteed, and/or advertised the subject short-term vacation property as **"suitable" and "welcoming" of children**, offering a **travel crib**, and **no age-minimum for children**.

15.   In other words, Defendants, AHL ASSETS LLC and VRBO, represented to and promised that the subject short-term vacation property would be safe and accommodating for families with young children.

16.   Below are some excerpts from Defendants', AHL ASSETS LLC and VRBO, listing illustrating that Defendants sought families with young children:

  

17.   The Plaintiff and her family of young children saw Defendants', AHL ASSETS LLC and VRBO, listing and booked and paid for the subject short-term vacation property for a rental period starting on or about January 15, 2022.

18. The Plaintiff and her family of young children, including four-year-old H.S., relied upon Defendants', AHL ASSETS LLC and VRBO, representations, promises, warranty, and guarantee that the subject short-term vacation property was safe for her family.

19. The Plaintiff even communicated with Defendant, AHL ASSETS LLC's, property manager numerous times before ultimately choosing and paying for the subject short-term vacation property because she wanted to make sure it was suitable for her young children.

20. On or about January 15, 2022, within minutes of arriving to the subject short-term vacation property, H.S. (Plaintiff's four year old son) entered one of the bedrooms that had a bathroom in it.

21. Unfortunately, while H.S. was exiting the bathroom toward the bedroom, he tripped over a dangerously uneven flooring that separated the two rooms and violently landed face first onto the bedroom bed frame, was knocked unconscious, and lost his two front teeth.

22. There was no door separating the bathroom from the living area of the bedroom.

23. More importantly, there was no sign warning about the dangerous condition or to "watch your step".

24. Indeed, Defendants', AHL ASSETS LLC and VRBO, listing provided a photo of the room to hide the dangerous condition:



25.    The below photo taken after the incident shows the severity of this dangerous condition:



26.    What's more, Defendants', AHL ASSETS LLC and VRBO, never warned on their
rental listing about the dangerous condition.

27.    Defendants, AHL ASSETS LLC and VRBO, never warned the Plaintiff about the
dangerous condition, either.

28.     Defendant', AHL ASSETS LLC, property manager, never bothered to mention the dangerous condition to the Plaintiff during their conversations before deciding to book the listing.

29.     Defendants, AHL ASSETS LLC and VRBO, were aware of the dangerous condition before the Plaintiff's arrived at the subject short-term vacation property, but chose not to fix it.

30.     Lastly, Defendant, VRBO, allowed Defendant, AHL ASSETS LLC, to list the subject short-term vacation property on its online rental marketplace without first inspecting it for safety.

**COUNT I**
**NEGLIGENCE CLAIM AGAINST DEFENDANT, HOMEAWAY.COM, INC., d/b/a VRBO.COM**

Plaintiff reaffirms and re-alleges paragraphs one (1) through thirty (30) as if fully set forth herein.

31.     At all times material hereto, Defendant, HOMEAWAY.COM, INC., d/b/a VRBO.COM, marketed and profited off the subject short-term vacation property.

32.     At all times material hereto, Defendant, HOMEAWAY.COM, INC., d/b/a VRBO.COM, marketed, represented, promised, warranted, guaranteed, and/or advertised the subject short-term vacation property as "suitable" and "welcoming" of children, safe for young children, and free of unreasonably dangerous conditions.

33.     At all times material hereto, Defendant HOMEAWAY.COM, INC., d/b/a VRBO.COM, owed all customers and invitees, including the Plaintiff and her family, a non-delegable duty of reasonable care to ensure that the subject short-term vacation property was in a reasonably safe condition for the safety of all invitees and guests on

its premises, which includes reasonable efforts to keep the premises free from hazards that may foreseeably give rise to loss, injury, or damage.

34. At all times material hereto, Defendant, HOMEAWAY.COM, INC., d/b/a VRBO.COM, owed all customers and invitees, including the Plaintiff and her family, a non-delegable duty to inspect the subject short-term vacation property it offered for rent on its online marketplace to ensure that the subject short-term vacation property was in a reasonably safe condition for the safety of all invitees and guests on its premises, which includes reasonable efforts to keep the premises free from hazards that may foreseeably give rise to loss, injury, or damage.

35. At all times material hereto, Defendant, HOMEAWAY.COM, INC., d/b/a VRBO.COM, owed all its customers and invitees, including the Plaintiff and her family, a non-delegable duty to warn of any unreasonably dangerous conditions on the subject short-term vacation property.

36. At all times material hereto, Defendant, HOMEAWAY.COM, INC., d/b/a VRBO.COM, acted negligently by failing to exercise reasonable care in the maintenance, inspection, warning, or mode of operation of the subject short-term vacation property.

37. Defendant, HOMEAWAY.COM, INC., d/b/a VRBO.COM, its agents, servants, apparent agents, representatives, contractors, and/or employees, breached its non-delegable duty owed to all invitees, including the Plaintiff and her family, by negligently maintaining the subject short-term vacation property in one or more of the following ways:

   a. Negligently failed to repair the unsafe flooring where the Plaintiff fell; and/or

b. Negligently failed to provide a safe ingress and egress to residents who enter/exit the bathroom in the subject bedroom; and/or

c. Negligently failed to place cones, signs or otherwise warn or advise the Plaintiff of the presence of a dangerous uneven flooring on its premises; and/or

d. Negligently failed to take appropriate corrective or remedial action to prevent injuries on its premises; and/or

e. Negligently failed to properly inspect the dangerous uneven flooring where the Plaintiff's incident occurred; and/or

f. Negligently maintained the flooring in the area where the Plaintiff fell; and/or

g. The subject flooring failed to meet the requirements of the South Florida Building Code; and/or

h. Negligently failed to warn of dangerous conditions; and/or

i. Negligently failed to make reasonable inspections; and/or

j. Negligently maintained the area where the Plaintiff fell; and/or

k. Negligently allowed the subject property to be available for short term rental on its marketplace; and/or

l. Defendant was otherwise negligent at the time and place complained of.

38. At all material times hereto, the Defendant, HOMEAWAY.COM, INC., d/b/a VRBO.COM, knew or, in the exercise of reasonable care, should have known of the dangerous and hazardous condition on its premises.

39. As a direct and proximate result of the negligence of Defendant, HOMEAWAY.COM, INC., d/b/a VRBO.COM, as hereinabove alleged, the Plaintiff was caused to suffer bodily injury and resulting pain and suffering, disability, disfigurement, mental

SHAKED LAW FIRM, P.A.
20900 NE 30TH AVE, SUITE 715, MIAMI, FL 33180 ● TEL.: (305) 937-0191 ● FAX: (305) 937-0193

anguish, loss of capacity for the enjoyment of life, the expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn money and aggravation of a previously existing condition. These losses are either permanent or continuing in nature, and the Plaintiff will suffer such losses in the future.

WHEREFORE, the Plaintiff, SHAWNA SPANEL, as mother and natural guardian of her minor son, H.S., demands judgment for damages against Defendant, HOMEAWAY.COM, INC., d/b/a VRBO.COM, plus costs, trial by jury for all issues so triable and any other relief this Honorable Court deems just and proper.

**COUNT II**
**NEGLIGENCE CLAIM AGAINST DEFENDANT, AHL ASSETS LLC**

Plaintiff reaffirms and re-alleges paragraphs one (1) through thirty (30) as if fully set forth herein.

40.     At all times material hereto, Defendant, AHL ASSETS LLC, owned, maintained, operated, marketed, and/or profited off the subject short-term vacation property.

41.     At all material times hereto, Defendant, AHL ASSETS LLC, owed all invitees, including the Plaintiff and her family, a non-delegable duty to maintain the subject short-term vacation property in a reasonably safe condition, to refrain from conduct that would injure the Plaintiff, and to warn the Plaintiff of any dangerous conditions on its premises.

42.     At all times material hereto, Defendant, AHL ASSETS LLC, owed all invitees, including the Plaintiff and her family, a non-delegable duty of reasonable care to maintain the subject short-term vacation property in a reasonably safe condition for the safety of residents and guests on its premises, which includes reasonable efforts to keep the premises free from hazards that may foreseeably give rise to loss, injury, or damage.

43.   At all times material hereto, Defendant, AHL ASSETS LLC, acted negligently by failing to exercise reasonable care in the maintenance, inspection, warning, or mode of operation of the subject short-term vacation property.

44.   Defendant, AHL ASSETS LLC, its agents, servants, apparent agents, representatives, contractors, and/or employees, breached its non-delegable duty owed to all invitees, including the Plaintiff and her family, by negligently maintaining the subject short-term vacation property in one or more of the following ways:

a.   Negligently failed to repair the unsafe flooring where the Plaintiff fell; and/or

b.   Negligently failed to provide a safe ingress and egress to residents who enter/exit the bathroom in the subject bedroom; and/or

c.   Negligently failed to place cones, signs or otherwise warn or advise the Plaintiff of the presence of a dangerous uneven flooring on its premises; and/or

d.   Negligently failed to take appropriate corrective or remedial action to prevent injuries on its premises; and/or

e.   Negligently failed to properly inspect the dangerous uneven flooring where the Plaintiff's incident occurred; and/or

f.   Negligently maintained the flooring in the area where the Plaintiff fell; and/or

g.   The subject flooring failed to meet the requirements of the South Florida Building Code; and/or

h.   Negligently failed to warn of dangerous conditions; and/or

i.   Negligently failed to make reasonable inspections; and/or

j.   Negligently maintained the area where the Plaintiff fell; and/or

k.   Defendant was otherwise negligent at the time and place complained of.

SHAKED LAW FIRM, P.A.
20900 NE 30TH AVE, SUITE 715, MIAMI, FL 33180 ● TEL.: (305) 937-0191 ● FAX: (305) 937-0193

45.    At all material times hereto, the Defendant, AHL ASSETS LLC, knew or, in the exercise of reasonable care, should have known of the dangerous and hazardous condition on its premises.

46.    As a direct and proximate result of the negligence of Defendant, AHL ASSETS LLC, as hereinabove alleged, the Plaintiff was caused to suffer bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, the expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn money and aggravation of a previously existing condition. These losses are either permanent or continuing in nature, and the Plaintiff will suffer such losses in the future.

WHEREFORE, the Plaintiff, SHAWNA SPANEL, as mother and natural guardian of her minor son, H.S., demands judgment for damages against Defendant, AHL ASSETS LLC, plus costs, trial by jury for all issues so triable and any other relief this Honorable Court deems just and proper.

**COUNT III**
**FAILURE TO PROVIDE MED-PAY BENEFITS AGAINST**
<u>**GENERALI INSURANCE**</u>

Plaintiff re-affirms and re-alleges paragraphs one (1) through thirty (30) as if fully set forth herein.

47.    At all times material hereto, and for valuable consideration, there was a purported Five Thousand Dollar ($5,000.00) policy of medical benefits (a/k/a MED-PAY) in force and effect, issued by the Defendant, GENERALI INSURANCE, which by the terms thereof, the Plaintiff is covered under the Defendant's insured's policy as the insured, VRBO, is legally liable to the Plaintiff for the injuries the Plaintiff sustained on the

subject short-term vacation property.  See Insurance Policy attached hereto as **Exhibit "A"**.

48.    Defendant, GENERALI INSURANCE, did agree to pay, in accordance with the policy, Five Thousand Dollar ($5,000.00), to or for the benefit of the injured person(s), any medical benefits, disability benefits, and death benefits provided for thereunder.

49.    At all times material hereto, the Plaintiff was renting the subject short-term vacation property of Defendants, VRBO and/or AHL ASSETS LLC, the named insureds. While the Plaintiff was lawfully on the insured's property, he tripped and fell, causing him to sustain severe injuries.

50.    Said incident caused the Plaintiff to suffer personal injuries, and sustain and/or incur medical bills, disability, transportation costs, loss of services, loss of future earning capacity and future inability to work.

51.    As a result of the aforesaid incident, the Plaintiff underwent medical treatment, incurred medical expenses, has suffered transportation costs, and loss of services.

52.    On or about March 21, 2022, the Plaintiff submitted a claim for MED-PAY benefits to Defendant, GENERALI INSURANCE, directly and/or through its agents, servants, and/or employees for payment of the usual, customary, and reasonable medical expenses, transportation costs, loss of services, and loss of future earning capacity for inability to work, proximately sustained as a result of the injuries suffered by the Plaintiff.

53.    Defendant, GENERALI INSURANCE, directly and/or through its authorized agents, servants, employees, has refused and continues to refuse to pay the usual, customary, and reasonable medical expenses, transportation costs, and the loss of services

sustained by the Plaintiff as a result of the above stated accident in direct violation of Florida Statutes and in breach of the subject policy of insurance.

54. The Plaintiff has complied with all conditions under the law and under the aforementioned policy, including but not limited to, having provided proper notice and proof of the loss, submitted medical bills, and other items sought by the Defendant.

55. As a result of Defendant, GENERALI INSURANCE's, failure and/or refusal to pay the aforesaid benefits due, the Plaintiff has outstanding medical bills, transportations costs, and loss of services which have not been paid by the Defendant.

56. The Plaintiff has been caused to retain the undersigned and this law firm to enforce her rights against Defendant, GENERALI INSURANCE, for MED-PAY benefits, and it is thereby obligated to pay reasonable attorney fees and costs.

57. The Plaintiff is entitled to prevailing party attorney fees pursuant to Florida Statutes Section 627.736 and 627.428.

WHEREFORE, the Plaintiff, SHAWNA SPANEL, demands judgment for damages against the Defendant, GENERALI INSURANCE, together with statutory interest attorney fees, costs, trial by jury for all issues so triable, and any other relief that this Honorable Court deems just and proper.

## COUNT IV
## FAILURE TO PROVIDE MED-PAY BENEFITS AGAINST
## MOUNT VERNON INSURANCE

Plaintiff re-affirms and re-alleges paragraphs one (1) through thirty (30) as if fully set forth herein.

58. At all times material hereto, and for valuable consideration, there was a purported Five Thousand Dollar ($5,000.00) policy of medical benefits (a/k/a MED-PAY) in force and

effect, issued by the Defendant, MOUNT VERNON INSURANCE, which by the terms thereof, the Plaintiff is covered under the Defendant's insured's policy as the insured, VRBO, is legally liable to the Plaintiff for the injuries the Plaintiff sustained on the subject short-term vacation property.  See Insurance Policy attached hereto as **Exhibit "B"**.

59.     Defendant, MOUNT VERNON INSURANCE, did agree to pay, in accordance with the policy, Five Thousand Dollar ($5,000.00), to or for the benefit of the injured person(s), any medical benefits, disability benefits, and death benefits provided for thereunder.

60.     At all times material hereto, the Plaintiff was renting the subject short-term vacation property of Defendants, VRBO and/or AHL ASSETS LLC, the named insureds. While the Plaintiff was lawfully on the insured's property, he tripped and fell, causing him to sustain severe injuries.

61.     Said incident caused the Plaintiff to suffer personal injuries, and sustain and/or incur medical bills, disability, transportation costs, loss of services, loss of future earning capacity and future inability to work.

62.     As a result of the aforesaid incident, the Plaintiff underwent medical treatment, incurred medical expenses, has suffered transportation costs, and loss of services.

63.     On or about March 21, 2022, the Plaintiff submitted a claim for MED-PAY benefits to Defendant, MOUNT VERNON INSURANCE, directly and/or through its agents, servants, and/or employees for payment of the usual, customary, and reasonable medical expenses, transportation costs, loss of services, and loss of future earning

capacity for inability to work, proximately sustained as a result of the injuries suffered by the Plaintiff.

64. Defendant, MOUNT VERNON INSURANCE, directly and/or through its authorized agents, servants, employees, has refused and continues to refuse to pay the usual, customary, and reasonable medical expenses, transportation costs, and the loss of services sustained by the Plaintiff as a result of the above stated accident in direct violation of Florida Statutes and in breach of the subject policy of insurance.

65. The Plaintiff has complied with all conditions under the law and under the aforementioned policy, including but not limited to, having provided proper notice and proof of the loss, submitted medical bills, and other items sought by the Defendant.

66. As a result of Defendant, MOUNT VERNON INSURANCE's, failure and/or refusal to pay the aforesaid benefits due, the Plaintiff has outstanding medical bills, transportations costs, and loss of services which have not been paid by the Defendant.

67. The Plaintiff has been caused to retain the undersigned and this law firm to enforce her rights against Defendant, MOUNT VERNON INSURANCE, for MED-PAY benefits, and it is thereby obligated to pay reasonable attorney fees and costs.

68. The Plaintiff is entitled to prevailing party attorney fees pursuant to Florida Statutes Section 627.736 and 627.428.

WHEREFORE, the Plaintiff, SHAWNA SPANEL, demands judgment for damages against the Defendant, MOUNT VERNON INSURANCE, together with statutory interest attorney fees, costs, trial by jury for all issues so triable, and any other relief that this Honorable Court deems just and proper.

DATED THIS **29th** day of **December, 2022**.

**Shaked Law Firm, P.A.**
Attorneys for Plaintiffs
20900 NE 30th Ave., Suite 715
Aventura, FL 33180
Telephone No.: (305) 937-0191
Facsimile No.: (305) 937-0193
Primary Email: filingcourtdocuments@gmail.com
Secondary Email: shakedeservice@gmail.com

By:     */s/ Cory D. Lapin*
        Sagi Shaked, Esq.
        Florida Bar No.:
        Cory D. Lapin, Esq.
        Florida Bar No.: 0112588

POLICY NUMBER: GL600001

GEN 00 01 11 05



☐ GENERALI ASSICURAZIONI GENERALI S.P.A., U.S. BRANCH D.B.A. THE GENERAL INSURANCE COMPANY OF TRIESTE & VENICE
☑ GENERALI – UNITED STATES BRANCH
☐ ASSICURAZIONI GENERALI – U.S. BRANCH
☐ GENERAL INSURANCE COMPANY OF TRIESTE AND VENICE – U.S. BRANCH

# COMMON POLICY DECLARATIONS

| Company Name | Producer Name |
|---|---|
| **GENERALI US BRANCH**<br>**7 WORLD TRADE CENTER**<br>**250 GREENWICH STREET, 33RD FLOOR**<br>**NEW YORK, NY 10007-0010** | **CUSTOMIZED SERVICE ADMINSTRATORS, INC.**<br>**4181 RUFFIN ROAD, SUITE 150**<br>**SAN DIEGO, CA 92123** |

NAMED INSURED: **Vrbo Holdings, Inc. and its affiliates**

MAILING ADDRESS: 1011 W. Fifth Street, Suite 300, Austin, TX 78703

POLICY PERIOD: FROM_____May 08, 2021_____TO_____May 08, 2022_____AT 12:01 A.M. STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE.

BUSINESS DESCRIPTION: Vacation Rental Marketplace

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED. THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.

| | PREMIUM |
|---|---|
| BOILER AND MACHINERY COVERAGE PART | $ _____ |
| CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART | $ _____ |
| COMMERCIAL AUTOMOBILE COVERAGE PART | $ _____ |
| COMMERCIAL GENERAL LIABILITY COVERAGE PART | $ ███████ |
| COMMERCIAL INLAND MARINE COVERAGE PART | $ _____ |

(Includes copyrighted material of Insurance Services Office, Inc., with its permission)
Copyright Insurance Services Office, 2004

# EXHIBIT A

NOT AN OFFICIAL COPY, NOT AN OFFICIAL COMMON PUBLIC ACCESS

|  | PREMIUM |
|---|---|
| COMMERCIAL PROPERTY COVERAGE PART | $ _____ |
| CRIME AND FIDELITY COVERAGE PART | $ _____ |
| LIQUOR LIABILITY COVERAGE PART | $ _____ |
| POLLUTION LIABILITY COVERAGE PART | $ _____ |
| COMMERCIAL OUTPUT PROGRAM COVERAGE PART | $ _____ |
|  | TOTAL: $ ▆▆▆▆ |

Premium is payable in ▆▆▆▆▆▆▆▆▆▆▆

**FORMS APPLICABLE TO ALL COVERAGE PARTS (SHOW NUMBERS):**

GEN 00 59 05 17; GEN 00 63 05 17; GEN 00 60 05 17; GFP 22 124 03 18; CG 00 65 05 17; GEN 00 66 05 17; IL 00 21 09 08; IL 02 75 11 13; CG 21 75 01 15; IL 09 85 01 15; GEN 00 61 05 17; and GEN 00 62 05 17.

| Countersigned: | By: |
|---|---|
| June 05, 2021 | *John Martin* |
| (Date) | (Authorized Representative) |

**NOTE**
OFFICERS' FACSIMILE SIGNATURES MAY BE INSERTED HERE, ON THE POLICY COVER OR ELSEWHERE AT THE COMPANY'S OPTION.

(Includes copyrighted material of Insurance Services Office, Inc., with its permission)
Copyright Insurance Services Office, 2001

POLICY NUMBER: GL600001

**COMMERCIAL GENERAL LIABILITY**
**GEN 00 59 05 17**

 **GENERALI**

☐ GENERALI ASSICURAZIONI GENERALI S.P.A., U.S. BRANCH D.B.A. THE GENERAL INSURANCE COMPANY OF TRIESTE & VENICE
☑ GENERALI – U.S. BRANCH DBA THE GENERAL INSURANCE COMPANY OF TRIESTE & VENICE – U.S. BRANCH
☐ ASSICURAZIONI GENERALI – U.S. BRANCH
☐ GENERAL INSURANCE COMPANY OF TRIESTE AND VENICE – U.S. BRANCH

# COMMERCIAL GENERAL LIABILITY DECLARATIONS

**PLEASE READ THIS POLICY CAREFULLY.**
**THIS CONTRACT IS A CLAIMS-MADE POLICY; PLEASE READ ITS PROVISIONS CAREFULLY.**

| Company Name | Producer Name |
|---|---|
| **GENERALI U.S. BRANCH**<br>**7 WORLD TRADE CENTER**<br>**250 GREENWICH STREET, 33rd FLOOR**<br>**NEW YORK, NY 10007** | **CUSTOMIZED SERVICE ADMINISTRATORS, INC.**<br>**4181 RUFFIN ROAD, SUITE 150**<br>**SAN DIEGO, CA 92123** |

NAMED INSURED:   Vrbo Holdings, Inc. and its affiliates

MAILING ADDRESS:   1011 W. Fifth Street, Suite 300, Austin, TX 78703

POLICY PERIOD:   FROM  MAY 08, 2021   TO  MAY 08, 2022   AT 12:01 A.M. TIME AT YOUR MAILING ADDRESS SHOWN ABOVE

THIS INSURANCE DOES NOT APPLY TO "BODILY INJURY", PROPERTY DAMAGE" OR PERSONAL AND ADVERTISING INJURY" WHICH OCCURS BEFORE THE RETROACTIVE DATE, IF ANY SHOWN BELOW.

RETROACTIVE DATE:   MAY 08, 2017
**(ENTER DATE OR "NONE" IF NO RETROACTIVE DATE APPLIES)**

THE LIMITS OF LIABILITY UNDER THIS POLICY SHALL BE REDUCED AND MAY BE COMPLETELY EXHAUSTED BY CLAIMS EXPENSES. THE COMPANY WILL HAVE NO FURTHER OBLIGATION OR LIABILITY OF ANY KIND FOR CLAIMS EXPENSES OR FOR ANY JUDGMENT OR SETTLEMENT AFTER EXHAUSTION OF THE LIMITS OF LIABILITY UNDER THIS POLICY.

| LIMITS OF INSURANCE | |
|---|---|
| EACH OCCURRENCE PER RENTAL AGREEMENT LIMIT | $1,000,000 |
| PER RENTAL PROPERTY AGGREGATE LIMIT | $1,000,000 |
| MEDICAL EXPENSE PER RENTAL AGREEMENT LIMIT | $5,000 |
| GENERAL POLICY AGGREGATE LIMIT | $20,000,000 |

NOT AN OFFICIAL COPY — PUBLIC ACCESS COPY — NOT AN OFFICIAL COPY

| DESCRIPTION OF BUSINESS | |
|---|---|
| BUSINESS DESCRIPTION: | Vacation Rental Marketplace |
| | |

| CLASSIFICATION AND PREMIUM | | | | |
|---|---|---|---|---|
| **CLASSIFICATION** | **CODE NO.** | **PREMIUM BASE** | **RATE** Premises/ Operations | **ESTIMATED PREMIUM** Premises/ Operations |
| Dwelling – One Family (lessor's risk only) | 63010 | ■ | ■ | ■ |

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY

TOTAL ESTIMATED PREMIUM ■       ■

$

| AUDIT PERIOD (IF APPLICABLE) | ☒ ANNUAL |
|---|---|

| ENDORSEMENTS |
|---|
| FORMS AND ENDORSEMENTS ATTACHED TO THIS POLICY: |
| GEN 00 59 05 17; GEN 00 60 05 17; GEN 00 62 05 17; GEN 00 63 05 17; CG 00 65 05 17; GEN 00 66 05 17; IL 00 21 09 08; IL 02 75 11 13; IL 09 85 01 15; CG 21 75 01 15; GFP 22 1240318 and GEN 00 61 05 17. |

**THESE DECLARATIONS, TOGETHER WITH THE COMMON POLICY CONDITIONS AND COVERAGE FORM(S) AND ANY ENDORSEMENT(S), COMPLETE THE ABOVE NUMBERED POLICY.**

| Countersigned: June 4, 2021 | By: *John Martini* |
|---|---|
| (Date) | (Authorized Representative) |



**COMMERCIAL GENERAL LIABILITY**
**GEN 00 63 05 17**

# SIGNATURE PAGE

In Witness Whereof, we have caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by our authorized representative.

_____
President

_____
Executive Vice President



COMMERCIAL GENERAL LIABILITY
GEN 00 60 05 17

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**COVERAGE PROVIDES CLAIMS-MADE COVERAGE.**
**PLEASE READ THE ENTIRE FORM CAREFULLY.**

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is an Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** –Definitions.

## SECTION I – COVERAGES

### COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

      (1) The amount we will pay for damages and "claims expenses" is limited as described in **SECTION III – LIMITS OF INSURANCE**; and

      (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments, settlements or "claims expenses" under Coverages **A** or medical expenses under Coverage **B**.

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments**.**

   b. This insurance applies to "bodily injury" and "property damage" only if:

      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

      (2) The "bodily injury" or "property damage" did not occur before the Retroactive Date, if any, shown in the Declarations or after the end of the policy period; and

      (3) A claim for damages because of the "bodily injury" or "property damage" is first made against any insured, in accordance with Paragraph **c.** below, during the policy period, any renewal thereof or any applicable extended reporting period we provide under **SECTION V – EXTENDED REPORTING PERIODS**.

   c. A claim by a person or organization seeking damages will be deemed to have been made at the earlier of the following times:

      (1) When notice of such claim is received and recorded by any insured or by us, whichever comes first; or

      (2) When we make settlement in accordance with Paragraph **a.** above.

   All claims for damages because of "bodily injury" to the same person, including damages claimed by any person or organization for care, loss of services, or death resulting at any time from the "bodily injury", will be deemed to have been made at the time the first of those claims is made against any insured.

All claims for damages because of "property damage" causing loss to the same person or organization will be deemed to have been made at the time the first of those claims is made against any insured.

2. **Exclusions**

This insurance does not apply to:

a. **Expected or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

b. **Ineligible Property**

Properties that are ineligible for short term rentals due to

(1) Local short term rental ordinances; or

(2) Local authorities have explicitly prohibited short term rental use at the property subject to the "rental agreement".

c. **Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

d. **Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

(a) The supervision, hiring, employment, training or monitoring of others by that insured; or

(b) Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph **(1)**, **(2)** or **(3)** above.

However, this exclusion applies only if the insured is in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For the purposes of this exclusion, permitting a person to bring alcoholic beverages on the insured's premises, for consumption on the insured's premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

e. **Workers' Compensation and Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**f. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

    **(a)** Employment by the insured; or

    **(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**g. Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

    **(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

        i.   "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

        ii.  "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

        iii. "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

    **(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

    **(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

        i.   Any insured; or

        ii.  Any person or organization for whom you may be legally responsible; or

    **(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

        i.   "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

        ii.  "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

        iii. "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

    **(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

    **(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

    **(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**h. Aircraft, Auto or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

    **(a)** Less than 26 feet long; and

    **(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

    **(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

    **(b)** The operation of any of the machinery or equipment listed in Paragraph f.(2) or f.(3) of the definition of "mobile equipment".

**(6)** A watercraft or aircraft which is primarily used as a residence and not used for transportation of persons or property.

**i. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**j. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**k. Damage to Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured; or

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because your work was incorrectly performed on it.

**l. Personal or Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**m. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**n. Recording and Distribution of Material or Information in Violation of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

**o. Trade Sanctions**

"Bodily injury" or "property damage" to the extent that the provision of such coverage or payment of such would expose us to any sanction, prohibition or restriction under United Nations resolutions or the trade or economic sanction, laws or regulations of the European Union, United Kingdom, United States of America or any other sovereign to whose rule we are subject.

## COVERAGE B – MEDICAL PAYMENTS

**1. Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(a)** The accident takes place in the "coverage territory" and during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

   (c) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

  b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

   (1) First aid administered at the time of an accident;

   (2) Necessary medical, surgical, X-ray and dental services, including prosthetic devices; and

   (3) Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

 **a. Any Insured**

  To any insured, except "volunteer workers".

 **b. Hired Person**

  To a person hired to do work for or on behalf of any insured or a tenant of any insured.

 **c. Injury on Normally Occupied Premises**

  To a person injured on that part of premises you own or rent that the person normally occupies.

 **d. Workers' Compensation and Similar Laws**

  To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

 **e. Coverage A Exclusions**

  Excluded under Coverage **A**.

## CLAIMS EXPENSES OF INDEMNITEES

If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all the following conditions are met:

1. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

2. This insurance applies to such liability assumed by the insured;

3. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

4. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

5. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

6. The indemnitee:

 a. Agrees in writing to:

  (1) Cooperate with us in the investigation, settlement or defense of the "suit";

  (2) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

  (3) Notify any other insurer whose coverage is available to the indemnitee; and

  (4) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

 b. Provides us with written authorization to:

  (1) Obtain records and other information related to the "suit"; and

  (2) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request shall be considered "claims expenses" and shall reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses ends: i) when we have used up the applicable limit of insurance in the payment of judgments, settlements, or "claims expenses"; or ii) the conditions set forth above, or the terms of the agreement described in Paragraph **6.** above, are no longer met.

## SECTION II – WHO IS AN INSURED

1. You are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

2. Each of the following is also an insured:

   a. The owner of the property subject to the "rental agreement".

   b. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

      **(1)** "Bodily injury"

      **(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

      **(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

      **(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph **(1)(a) or (b)** above; or

      **(d)** Arising out of his or her providing or failing to provide professional health care services.

      **(2)** "Property damage" to property:

      **(a)** Owned, occupied or used by; or

      **(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

   c. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as the property manager or real estate manager of the property subject to the "rental agreement".

   d. Any person or organization that rents a property to a third party through your website or the website of your parent, its subsidiaries or affiliates using your checkout, either directly or through your API, but only with respect to liability arising out of the ownership, maintenance or use of such property under the terms and for the duration of a "rental agreement" for such rental property.

3. The following are not an insured:

   a. Any person or organization that is a lessee of the rental property subject to the "rental agreement" unless acting with the express written consent of the rental property owner.

   b. Any property manager or real estate manager acting on behalf of a lessee of the rental property subject to the "rental agreement".

   No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

2. In the event an insured as defined in Section II.2 and II.3 does not maintain adequate insurance coverage sufficient to cover the rental of the properties they list on the site, the limits and amounts paid on behalf of that

insured will be subject to a 25% deductible, payable by that insured.

3. Subject to Paragraph 2 above, the Per Rental Property Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses and under Coverage **B**; and

   b. Damages under Coverage **A**; and

   c. "Claims expenses"

   because of "bodily injury" or "property damage" arising out of a single rental property location irrespective of under how many "rental agreements" claims are made during the policy period.

4. Subject to Paragraph **3.** above, as applicable, the Each Occurrence Per Rental Agreement Limit is the most we will pay for the sum of:

   a. Damages under Coverage **A**;

   b. Medical expenses under Coverage **B**; and

   c. "Claims expenses"

   because of all "bodily injury" and "property damage" arising out of any one "occurrence" during the term of a "rental agreement".

5. Subject to Paragraph **4.** above, the Medical Expense Per Rental Agreement Limit is the most we will pay under Coverage **B.** for all medical expenses because of "bodily injury" sustained by all persons during the term of a "rental agreement".

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

1. **Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties in the Event of Occurrence, Offense, Claim or Suit**

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      (1) How, when and where the "occurrence" or offense took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

   b. If a claim is made or "suit" is brought against any insured, you must:

      (1) Immediately record the specifics of the claim or "suit" and the date received; and

      (2) Notify us as soon as practicable.

      You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   c. You and any other involved insured must:

      (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

      (2) Authorize us to obtain records and other information;

      (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

      (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

   d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

   e. With regard to liability for "bodily injury" and "property damage", unless we are prejudiced by the insured's or your failure to comply with the above requirements, no provision of this Coverage Part requiring you or any insured to give notice of "occurrence", claim or "suit", or forward demands, notices, summonses or

legal papers in connection with a claim or "suit" will bar coverage under this Coverage Part.

**3.  Legal Action Against Us**

No person or organization has a right under this Coverage Part:

a.   To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b.   To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4.  Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverage **A** of this Coverage Part, our obligations are limited as follows:

**a.  Co-Primary Insurance**

Pertaining to an **insured** defined in Section II.2 and II.3, this insurance is co-primary except when Paragraph c. below applies. When this insurance is co-primary, we will share with insurance coverage obtained by that insured for properties they rent that are listed on the site by the method described in Paragraph **d** below.

**b.  Primary Insurance**

(1) Pertaining to an insured defined in Section II.1, this insurance is primary except when Paragraph c. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all other insurance by the method described in Paragraph d. below.

(2) Pertaining to an insured defined in Section II.2 and II.3, in the event that insured does not maintain adequate insurance coverage sufficient to cover the rental of the properties they list on the site, this insurance is primary, but the limits and amounts paid on behalf of that insured will be subject to a 25% deductible payable by that insured as set forth in Section III.2.

**c.  Excess Insurance**

(1) This insurance is excess over:

(a) Any of the other insurance, whether primary, excess, contingent or on any other basis if the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury and Property Damage Liability;

(b) Any other primary insurance available to you covering liability for damages arising out of your premises or operations, or the products and completed operations, other than insurance for liability arising out of the ownership, maintenance or use of property under the terms and for the duration of a "rental agreement" also covered under this policy; and

(c) Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

(d) Other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

(2) When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

(3) When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(a) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(b) The total of all deductible and self-insured amounts under all that other insurance.

(4) We will share the remaining loss and "claim expenses", if any, with any other insurance that is not described in this Other Insurance provision and does not specifically apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**d.**

**Method of Sharing**

Unless all the other insurance prohibits contribution by equal shares, each insurer will contribute equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

The statements in the Declarations are accurate and complete;

**a.** Those statements are based upon representations you made to us; and

**b.** We have issued this policy in reliance upon your representations.

**7. Separation of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer of Rights of Recovery Against Others to Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**10. Claim Settlement**

We will notify the first Named Insured in writing of:

**a.** An initial offer to settle a claim made or "suit" brought against any insured under this coverage. The notice will be given not later than the 10th day after the date on which the offer is made.

**b.** Any settlement of a claim made or "suit" brought against the insured under this coverage. The notice will be given not later than the 30th day after the date of the settlement.

**SECTION V -- EXTENDED REPORTING PERIODS**

**1.** We will provide one or more Extended Reporting Periods, as described below, if:

**a.** This Coverage Part is canceled or not renewed; or

**b.** We renew or replace this Coverage Part with insurance that:

**(1)** Has a Retroactive Date later than the Retroactive Date shown in the Declarations of this Coverage Part; or

**(2)** Does not apply to "bodily injury" or "property damage" on a claims-made basis.

**2.** Extended Reporting Periods do not extend the policy period or change the scope of coverage provided. They apply only to claims for "bodily injury" or "property damage" that occurs before the end of the policy period but not before the Retroactive Date, if any, shown in the Declarations. Once in effect, Extended Reporting Periods may not be canceled.

3. A Basic Extended Reporting Period is automatically provided without additional charge. This period starts with the end of the policy period and lasts for:

   a. Five years with respect to claims because of "bodily injury" and "property damage" arising out of an "occurrence" reported to us, not later than 90 days after the end of the policy period, in accordance with Paragraph **2.a.** of the **SECTION IV – DUTIES IN THE EVENT OF OCCURRENCE, OFFENSE, CLAIM OR SUIT CONDITION;** and

   b. Ninety days with respect to claims arising from "occurrences" not previously reported to us.

   The Basic Extended Reporting Period does not apply to claims that are covered under any subsequent insurance you purchase, or that would be covered but for exhaustion of the amount of insurance applicable to such claims.

4. The Basic Extended Reporting Period does not reinstate or increase the Limits of Insurance.

5. A Supplemental Extended Reporting Period is available, but only by an endorsement and for an extra charge. This supplemental period starts when the Basic Extended Reporting Period, set forth in Paragraph **3.** above, ends.

   You must give us a written request for the endorsement within 60 days after the end of the policy period. The Supplemental Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due.

   We will determine the additional premium in accordance with our rules and rates. In doing so, we may take into account the following:

   a. The exposures insured;

   b. Previous types and amounts of insurance;

   c. Limits of Insurance available under this Coverage Part for future payment of damages; and

   d. Other related factors.

   This endorsement shall set forth the terms, not inconsistent with this section, applicable to the Supplemental Extended Reporting Period, including a provision to the effect that the insurance afforded for claims first received during such period is excess over any other valid and collectible insurance available under policies in force after the Supplemental Extended Reporting Period starts.

6. If the Supplemental Extended Reporting Period is in effect, we will provide the supplemental aggregate limits of insurance described below, but only for claims first received and recorded during the Supplemental Extended Reporting Period.

   The supplemental aggregate limit of insurance will be equal to the dollar amount shown in the Declarations in effect at the end of the policy period for such of the following limit of insurance for which a dollar amount has been entered:

   Per Rental Property Aggregate Limit

   Paragraphs **2.** of **SECTION III – LIMITS OF INSURANCE** will be amended accordingly.

## SECTION VI – DEFINITIONS

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

   Notices that are published include material placed on the Internet or on similar electronic means of communication; and

   Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

2. "Auto" means:

   a. A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

   b. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include:

(1) "Mobile equipment"; or

(2) A vehicle which is primarily used as a residence and is not registered for travel on public roads.

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Claims expenses" means all costs allocated to a specific claim or "suit" we investigate, settle or defend, including:

a. Fees charged by any attorney we designate to defend an insured; and

b. All other fees, costs and expenses we authorize that result from the investigation, adjustment, defense or appeal of any claim or "suit", including, but not limited to:

c. All costs taxed against any insured and all interest which accrues after the entry of any judgment and before we have tendered or deposited, in court or otherwise, such judgment amount for which any insured is liable; and

d. Premiums on appeal bonds and premium on bonds to release attachments in such suits. We shall have no obligation to provide such bonds.

"Claim expenses shall not include salaries and expenses of our regular employees or officers.

5. "Coverage territory" means anywhere in the world provided the insured's responsibility to pay damages is determined:

a. In a "suit" on the merits, that is brought in a territory:

(1) In which we can provide effective defense; and

(2) In which we are not prohibited from engaging in transactions by any applicable sanctions and trade embargoes, including those administered by the U.S. Treasury Department's Office of Foreign Assets Control; or

b. In a settlement to which we agree.

6. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

7. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

8. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

9. "Insured contract" means:

a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

b. A sidetrack agreement;

c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e. An elevator maintenance agreement;

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph f. does not include that part of any contract or agreement:

(1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or

damage; or

    **(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

**10.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**11.** "Loading or unloading" means the handling of property:

    **a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

    **b.** While it is in or on an aircraft, watercraft or "auto"; or

    **c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

    but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**12.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

    **a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

    **b.** Vehicles maintained for use solely on or next to premises you own or rent;

    **c.** Vehicles that travel on crawler treads;

    **d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

        **(1)** Power cranes, shovels, loaders, diggers or drills; or

        **(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

    **e.** Vehicles not described in Paragraph **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

        **(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

        **(2)** Cherry pickers and similar devices used to raise or lower workers;

    **f.** Vehicles not described in Paragraph **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

    **(a)** Snow removal;

    **(b)** Road maintenance, but not construction or resurfacing; or

    **(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

    **a.** False arrest, detention or imprisonment;

    **b.** Malicious prosecution;

    **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room,

dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**17.** "Rental agreement" means a written (whether electronic or paper) agreement for consideration between two parties which provides for use and occupancy of the dwelling and its premises for a limited period. The "rental agreement" shall be deemed to have terminated at the earliest of the following:

**a.** The termination date stated in the agreement;

**b.** The date on which the tenant vacates the premises which are the subject of such agreement; or

**c.** The date on which the owner regains care, custody or control of the property.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury" or "property damage" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.



COMMERCIAL GENERAL LIABILITY<br>GEN 00 65 05 17

# DIVIDEND PROVISION

You shall be entitled to receive such refunds of unabsorbed premium as shall be determined in our absolute discretion under a Dividend Distribution Plan adopted by us and which may be in effect and applicable to this policy at the time of expiration of the policy.

The Dividend Distribution Plan is one under which premium earnings in excess of requirements of losses, expenses, reserves and surplus additions are apportioned to the policyholders who are entitled under our rules to participate therein.



**GENERALI**

COMMERCIAL GENERAL LIABILITY
GEN 00 66 05 17

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 30 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 365 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance coverage afforded under this policy. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. (Reserved for Future Use)**

**D. (Reserved for Future Use)**

**E. Premiums**

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

**F. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

IL 00 21 09 08

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
**(Broad Form)**

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

      (1) The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" includes radioactive, toxic or explosive properties.

   "Nuclear material" means "source material", "special nuclear material" or "by-product material".

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

(a) Any "nuclear reactor";

(b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

© ISO Properties, Inc., 2007

IL 02 75 11 13

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TEXAS CHANGES – CANCELLATION AND NONRENEWAL PROVISIONS FOR CASUALTY LINES AND COMMERCIAL PACKAGE POLICIES

This endorsement modifies insurance provided under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
    EMPLOYMENT-RELATED PRACTICES LIABILITY
    FARM COVERAGE PART – FARM LIABILITY COVERAGE FORM
    LIQUOR LIABILITY COVERAGE PART
    POLLUTION LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

This endorsement also modifies insurance provided under the following when written as part of a Commercial Package Policy:

    CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    COMMERCIAL INLAND MARINE COVERAGE PART
    COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
    COMMERCIAL PROPERTY COVERAGE PART
    CRIME AND FIDELITY COVERAGE PART
    EMPLOYMENT-RELATED PRACTICES LIABILITY
    EQUIPMENT BREAKDOWN COVERAGE PART
    FARM COVERAGE PART
    LIQUOR LIABILITY COVERAGE PART
    POLLUTION LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

   **2.** We may cancel this policy:

      **a.** By mailing or delivering to the first Named Insured written notice of cancellation, stating the reason for cancellation, at least 10 days before the effective date of cancellation.

However, if this policy covers a condominium association, and the condominium property contains at least one residence or the condominium declarations conform with the Texas Uniform Condominium Act, then the notice of cancellation, as described above, will be provided to the first Named Insured 30 days before the effective date of cancellation. We will also provide 30 days' written notice to each unit-owner to whom we issued a certificate or memorandum of insurance, by mailing or delivering the notice to each last mailing address known to us.

NOT AN OFFICIAL COPY

b. For the following reasons, if this policy does not provide coverage to a governmental unit, as defined under 28 TEX. ADMIN. CODE, Section 5.7001 or on one- and two- family dwellings:

(1) If this policy has been in effect for 60 days or less, we may cancel for any reason except that, under the provisions of the Texas Insurance Code, we may not cancel this policy solely because the policyholder is an elected official.

(2) If this policy has been in effect for more than 60 days, or if it is a renewal or continuation of a policy issued by us, we may cancel only for one or more of the following reasons:

(a) Fraud in obtaining coverage;

(b) Failure to pay premiums when due;

(c) An increase in hazard within the control of the insured which would produce an increase in rate;

(d) Loss of our reinsurance covering all or part of the risk covered by the policy; or

(e) If we have been placed in supervision, conservatorship or receivership and the cancellation is approved or directed by the supervisor, conservator or receiver.

c. For the following reasons, if this policy provides coverage to a governmental unit, as defined under 28 TEX. ADMIN. CODE, Section 5.7001 or on one- and two-family dwellings:

(1) If this policy has been in effect for less than 90 days, we may cancel coverage for any reason.

(2) If this policy has been in effect for 90 days or more, or if it is a renewal or continuation of a policy issued by us, we may cancel coverage, only for the following reasons:

(a) If the first Named Insured does not pay the premium or any portion of the premium when due;

(b) If the Texas Department of Insurance determines that continuation of this policy would result in violation of the Texas Insurance Code or any other law governing the business of insurance in Texas;

(c) If the Named Insured submits a fraudulent claim; or

(d) If there is an increase in the hazard within the control of the Named Insured which would produce an increase in rate.

B. The following condition is added and supersedes any provision to the contrary:

**Nonrenewal**

1. We may elect not to renew this policy except that, under the provisions of the Texas Insurance Code, we may not refuse to renew this policy solely because the policyholder is an elected official.

2. This paragraph, **2.**, applies unless the policy qualifies under Paragraph **3.** below.

If we elect not to renew this policy, we may do so by mailing or delivering to the first Named Insured, at the last mailing address known to us, written notice of nonrenewal, stating the reason for nonrenewal, at least 60 days before the expiration date. If notice is mailed or delivered less than 60 days before the expiration date, this policy will remain in effect until the 61st day after the date on which the notice is mailed or delivered. Earned premium for any period of coverage that extends beyond the expiration date will be computed pro rata based on the previous year's premium.

3. If this policy covers a condominium association, and the condominium property contains at least one residence or the condominium declarations conform with the Texas Uniform Condominium Act, then we will mail or deliver written notice of nonrenewal, at least 30 days before the expiration or anniversary date of the policy, to:

a. The first Named Insured; and

b. Each unit-owner to whom we issued a certificate or memorandum of insurance.

We will mail or deliver such notice to each last mailing address known to us.

4. If notice is mailed, proof of mailing will be sufficient proof of notice.

5. The transfer of a policyholder between admitted companies within the same insurance group is not considered a refusal to renew.

COMMERCIAL GENERAL LIABILITY
CG 21 75 01 15

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM AND EXCLUSION OF OTHER ACTS OF TERRORISM COMMITTED OUTSIDE THE UNITED STATES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

"Any injury or damage" arising, directly or indirectly, out of a "certified act of terrorism", or out of an "other act of terrorism" that is committed outside of the United States (including its territories and possessions and Puerto Rico), but within the "coverage territory". However, with respect to an "other act of terrorism", this exclusion applies only when one or more of the following are attributed to such act:

**1.** The total of insured damage to all types of property exceeds $25,000,000 (valued in US dollars). In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the terrorism and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

**2.** Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

**a.** Physical injury that involves a substantial risk of death; or

**b.** Protracted and obvious physical disfigurement; or

**c.** Protracted loss of or impairment of the function of a bodily member or organ; or

**3.** The terrorism involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

**4.** The terrorism is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

**5.** Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials.

With respect to this exclusion, Paragraphs **1.** and **2.** describe the thresholds used to measure the magnitude of an incident of an "other act of terrorism" and the circumstances in which the threshold will apply for the purpose of determining whether this exclusion will apply to that incident.

**B.** The following definitions are added:

**1.** For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part.

© Insurance Services Office, Inc., 2015

2. "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

   a. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act;

   b. The act resulted in damage:

      (1) Within the United States (including its territories and possessions and Puerto Rico); or

      (2) Outside of the United States in the case of:

         (a) An air carrier (as defined in Section 40102 of title 49, United States Code) or United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), regardless of where the loss occurs; or

         (b) The premises of any United States mission; and

   c. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

3. "Other act of terrorism" means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion, and the act is not a "certified act of terrorism".

   Multiple incidents of an "other act of terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

C. The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.

   © Insurance Services Office, Inc., 2015   CG 21 75 01 15

POLICY NUMBER: GL600001  (May 8, 2021)

IL 09 85 01 15

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

**SCHEDULE**

| SCHEDULE - PART I |
|---|
| **Terrorism Premium (Certified Acts)** ▉ |
| **This premium is the total Certified Acts premium attributable to the following Coverage Part(s), Coverage Form(s) and/or Policy(ies):** |
| |
| |
| |
| Additional Information, if any, concerning the terrorism premium: |
| |

| SCHEDULE - PART II | | |
|---|---|---|
| **Federal share of terrorism losses** _ | **% Year: 20** | |
| (Refer to Paragraph **B.** in this endorsement.) | | |
| **Federal share of terrorism losses** _ | **% Year: 20** | |
| (Refer to Paragraph **B.** in this endorsement.) | | |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act, *we* are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

**IL09850115**

© Insurance Services Office, Inc., 2015

**Page 1 of 2**

**B. Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals a percentage (as shown in Part II of the Schedule of this endorsement or in the policy Declarations) of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**C. Cap On Insurer Participation In Payment Of Terrorism Losses**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.



**COMMERCIAL GENERAL LIABILITY**
**GEN 00 61 05 17**

GENERALI

## POLICYHOLDER DISCLOSURE
## NOTICE OF TERRORISM
## INSURANCE COVERAGE

You are hereby notified that under the Terrorism Risk Insurance Act, as amended, you have a right to purchase insurance coverage for losses resulting from acts of terrorism. *As defined in Section 102(1) of the Act* The term "act of terrorism" means any act or acts that are certified by the Secretary of the Treasury-in consultation with the Secretary of Homeland Security, and the Attorney General of the United States-to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

YOU SHOULD KNOW THAT WHERE COVERAGE IS PROVIDED BY THIS POLICY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM, SUCH LOSSES MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. HOWEVER, YOUR POLICY MAY CONTAIN OTHER EXCLUSIONS WHICH MIGHT AFFECT YOUR COVERAGE, SUCH AS AN EXCLUSION FOR NUCLEAR EVENTS. UNDER THE FORMULA, THE UNITED STATES GOVERNMENT GENERALLY REIMBURSES 85% THROUGH 2015; 84% BEGINNING ON JANUARY 1, 2016; 83% BEGINNING ON JANUARY 1, 2017; 82% BEGINNING ON JANUARY 1, 2018; 81% BEGINNING ON JANUARY 1, 2019, 80% BEGINNING ON JANUARY 1, 2020, and 79% BEGINNING on JANUARY 1, 2021 OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURANCE COMPANY PROVIDING THE COVERAGE. THE PREMIUM CHARGED FOR THIS COVERAGE IS PROVIDED BELOW AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS THAT MAY BE COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT.

YOU SHOULD ALSO KNOW THAT THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A $100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURERS' LIABILITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS $100 BILLION. IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED $100 BILLION, YOUR COVERAGE MAY BE REDUCED.

**Acceptance or Rejection of Terrorism Insurance Coverage**

| | |
|---|---|
| | I hereby elect to purchase terrorism coverage for a prospective premium of $ ▮▮▮ |
| | I hereby decline to purchase terrorism coverage for certified acts of terrorism. I understand that I will have no coverage for losses resulting from certified acts of terrorism. |

_____
Policyholder/Applicant's Signature

_____
Print Name

_____
Date

GENERALI US BRANCH
Insurance Company

GL600001
Policy Number

**GEN 00 61 05 17**                                                                              **Page 1 of 1**



**GENERALI**

COMMERCIAL GENERAL LIABILITY
GEN 00 62 05 17

## IMPORTANT NOTICE

To obtain information or make a complaint:

You may contact your Agent or Broker.

You may call our toll-free telephone number for information or to make a complaint at:

**1-800-313-6457**

You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at:

**1-800-252-3439**

You may write the Texas Department of Insurance:

P. O. Box 149104
Austin, TX 78714-9104
Fax: (512) 490-1007
Web: www.tdi.texas.gov
E-mail: ConsumerProtection@tdi.texas.gov

**PREMIUM OR CLAIM DISPUTES:**
Should you have a dispute concerning your premium or about a claim you should contact the agent or the company first. If the dispute is not resolved, you may contact the Texas Department of Insurance.

**ATTACH THIS NOTICE TO YOUR POLICY:**
This notice is for information only and does not become a part or condition of the attached document.

## AVISO IMPORTANTE

Para obtener informacion o para someter una queja:

Puede comunicarse con su Agente o Corredor.

Usted puede llamar al numero de telefono gratis para informacion o para someter una queja al:

**1-800-313-6457**

Puede comunicarse con el Departamento de Seguros de Texas para obtener informacion acerca de companias, coberturas, derechos o quejas al:

**1-800-252-3439**

Puede escribir al Departamento de Seguros de Texas:

P. O. Box 149104
Austin, TX 78714-9104
Fax: (512) 490-1007
Web: www.tdi.texas.gov
E-mail: ConsumerProtection@tdi.texas.gov

**DISPUTAS SOBRE PRIMAS O RECLAMOS:**
Si tiene una disputa concerniente a su prima o a un reclamo, debe comunicarse con el agente o la compania primero. Si no se resuelve la disputa, puede entonces comunicarse con el departamento (TDI).

**UNA ESTE AVISO A SU POLIZA:**
Este aviso es solo para proposito de informacion y no se convierte en parte o condicion del document adjunto.



GENERALI

2005-000 I

_____NEW_____
Renewal of Number

POLICY DECLARATIONS

**No. CPL2635975**

# Mount Vernon Fire Insurance Company
1190 Devon Park Drive, Wayne, Pennsylvania 19087
A Member Company of United States Liability Insurance Group

Home Office Copy

NAMED INSURED AND ADDRESS:
ASSAF LEVY
2443 FILLMORE ST #380-8112
SAN FRANCISCO, CA 94115

THIS INSURANCE IS ISSUED PURSUANT TO THE FLORIDA SURPLUS LINES LAW. PERSONS INSURED BY SURPLUS LINES CARRIERS DO NOT HAVE THE PROTECTION OF THE FLORIDA INSURANCE GUARANTY ACT TO THE EXTENT OF ANY RIGHT OF RECOVERY FOR THE OBLIGATION OF AN INSOLVENT UNLICENSED INSURER. SURPLUS LINES INSURERS POLICY RATES AND FORMS ARE NOT APPROVED BY ANY FLORIDA REGULATORY AGENCY.

POLICY PERIOD: (MO. DAY YR.)   From:  06/14/2021  To:  06/14/2022
ENTITY:                        Individual

12:01 A.M. STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED.

| | PREMIUM |
|---|---|
| Comprehensive Personal Liability Insurance | $1,426.00 |
| | |
| Wholesaler Broker Fee | $100.00 |
| Service Fee | $0.92 |
| Surplus Lines Tax | $75.38 |
| TOTAL: | $1,602.30 |

Coverage Form(s) and Endorsement(s) made a part of this policy at time of issue
See Endorsement EOD (1/95)

Agent:   JOHNSON & JOHNSON, INC. (1309)
         PO Box 899
         Charleston, SC  29402

Broker:  BRIGHTWAY INSURANCE, INC.
         P.O. Box 5700
         JACKSONVILLE, FL  32247

Issued:  06/23/2021 1:57 PM

By: _____
        Authorized Representative

UPD (08-07)   THESE DECLARATIONS TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE PART DECLARATIONS, COVERAGE PART COVERAGE FORM(S), FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.

**EXHIBIT B**

## EXTENSION OF DECLARATIONS

**Policy No. CPL2635975**

Effective Date:     06/14/2021
12:01 AM STANDARD TIME AT YOUR MAILING ADDRESS

### FORMS AND ENDORSEMENTS

The following forms apply to Comprehensive Personal Liability Insurance

| Endt# | Revised | Description of Endorsements |
|---|---|---|
| 2110 | 04/15 | Service Of Suit |
| DL 107 | 06/11 | Absolute War Or Terrorism Exclusion |
| DL 113 | 07/11 | Loss Assessment Coverage |
| DL 115 | 07/11 | Limitation of Coverage to Designated Premises |
| DL 116 | 07/11 | Absolute Earth Movement Exclusion |
| DL 120 | 07/14 | Absolute Exclusion For Pollution, Organic Pathogen, Silica, Asbestos And Lead With A Hostile Fire Exception |
| DL 121 | 02/13 | Punitive Damage Exclusion |
| DL 122 | 02/13 | Trampoline Or Rebounding Device Exclusion |
| DL 123 | 11/15 | Personal Injury |
| DL0109 | 08/04 | Special Provisions - Florida |
| DL2401 | 12/02 | Personal Liability |
| DL2402 | 12/02 | Personal Liability Additional Policy Conditions |
| DL2404 | 12/02 | Additional Residence Rented To Others 1, 2, 3 Or 4 Families |
| DL2416 | 12/02 | No Coverage For Home Day Care Business |
| DL2484 | 10/04 | Exclusion of Canine-Related Liability |
| DL2509 | 12/10 | Special Provisions - Florida |
| Jacket | 07/19 | Policy Jacket |
| PER-106 | 11/11 | Contractor Or Sub-Contractor Exclusion |
| PrivNotice | 11/14 | Privacy Notice |

## COMPREHENSIVE PERSONAL LIABILITY INSURANCE DECLARATIONS

Policy No.   CPL2635975

Effective Date:  06/14/2021
12:01 STANDARD TIME

### LIMITS OF INSURANCE

| | |
|---|---|
| Coverage M - Medical Payments to Others | $5,000 |
| Coverage L - Personal Liability | $1,000,000 |

### LIABILITY DEDUCTIBLE

$0

### LOCATIONS OF ALL PREMISES YOU OWN, RENT OR OCCUPY

| Location | Address | Territory |
|---|---|---|
| 1 | 21928 Pine Parkway, Boca Raton, FL 33428 | 002 |
| 2 | 1020 Hollywood Blvd, Hollywood, FL 33019 | 002 |
| 3 | 1143 Lincoln Street, Hollywood, FL 33019 | 002 |
| 4 | 11146 Lakeaire Circle, Boca Raton, FL 33498 | 002 |
| 5 | 1345 Adams Street, Hollywood, FL 33019 | 002 |
| 6 | 1102 N 14th Avenue Units 1-2, Hollywood, FL 33020 | 002 |
| 7 | 715 Hollywood Avenue, Hollywood, FL 33019 | 002 |
| 8 | 2471 Sw 58th Manor, Fort Lauderdale, FL 33312 | 002 |

### PREMIUM COMPUTATION

| Loc | Classification | Code No. | Premium Basis | Rate<br>All Other | Advance Premium<br>All Other |
|---|---|---|---|---|---|
| 1 | Dwellings - one-family | 63010 | 1 Per Dwelling | 567.600 | $568 |
| 2 | Dwellings - one-family | 63010 | 1 Per Dwelling | 114.000 | $114 |
| 3 | Dwellings - one-family | 63010 | 1 Per Dwelling | 114.000 | $114 |
| 3 | Swimming Pool | 48925 | 1 Per Pool | 60.000 | $60 |
| 4 | Dwellings - one-family | 63010 | 1 Per Dwelling | 114.000 | $114 |
| 5 | Dwellings - one-family | 63010 | 1 Per Dwelling | 114.000 | $114 |
| 6 | Dwellings - two-family | 63011 | 1 Per Dwelling | 114.000 | $114 |
| 7 | Dwellings - one-family | 63010 | 1 Per Dwelling | 114.000 | $114 |
| 8 | Dwellings - one-family | 63010 | 1 Per Dwelling | 114.000 | $114 |

TOTAL PREMIUM FOR COMPREHENSIVE PERSONAL LIABILITY INSURANCE:      $1,426
(This Premium may be subject to adjustment.)    MP - minimum premium

Coverage Form(s)/Part(s) and Endorsement(s) made a part of this policy at time of issue:
See Form EOD (01/95)

THESE DECLARATIONS ARE PART OF THE POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD.

Includes copyrighted material of ISO Commercial Risk Services, Inc., with its permission.
Copyright, ISO Commercial Risk Services, Inc., 1983, 1984, 1988

**This page has been intentionally left blank.**

## Service Of Suit

Pursuant to any statute of any state, territory or district of the United States which makes provisions therefore, the Company hereby designates the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the Statute, or his successors in office, as our true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured(s) or any beneficiary hereunder arising out of this contract of insurance, and hereby designate the below named as the person to whom the said officer is authorized to mail process or a true copy thereof.

It is further agreed that service of process in such suit may be made upon the General Counsel of the Company, or his nominee, at 1190 Devon Park Drive, Wayne, Pennsylvania 19087 and that in any suit instituted against any one of them upon this policy, the Company will abide by the final decision of such Court or any Appellate Court in the event of an appeal.

**UNITED STATES LIABILITY INSURANCE GROUP**
**WAYNE, PENNSYLVANIA**

This endorsement modifies insurance provided under the following:

**PERSONAL LIABILITY**

## ABSOLUTE WAR OR TERRORISM EXCLUSION

The following supersedes the terms and conditions of this policy.

If the policy to which this endorsement is attached contains an exclusion for War, that exclusion is deleted in its entirety and replaced with the following. If the policy to which this endorsement is attached does not contain an exclusion for War, the exclusion below applies.

This insurance does not apply to, and the Company will not defend or pay Loss for, any Claim arising out of, directly or indirectly resulting from, based upon or in any way involving any actual or alleged:

**A.** War, including undeclared or civil war;

**B.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents;

**C.** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these; or

**D.** "Terrorism", including any action taken in hindering or defending against an actual or expected incident of "terrorism"

regardless of any other cause or event that contributes concurrently or in any sequence to the injury or damage

The following definition is added to **DEFINITIONS**:

**12.** "Terrorism" means activities against persons, organizations or property of any nature:

  **a.** That involve the following or preparation for the following:

    **(1)** Use or threat of force or violence;

    **(2)** Commission or threat of a dangerous act; or

    **(3)** Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

  **b.** When one or both of the following applies:

    **(1)** The effect is to intimidate or coerce a government, or to cause chaos among the civilian population or any segment thereof, or to disrupt any segment of the economy; or

    **(2)** It is reasonable to believe the intent is to intimidate or coerce a government, or to seek revenge or retaliate, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

All other terms and conditions of this policy remain unchanged. This endorsement is a part of your policy and takes effect on the effective date of your policy unless another effective date is shown.

DL 107 (06-11)                                                                                     Page 1 of 1

**UNITED STATES LIABILITY INSURANCE GROUP
WAYNE, PENNSYLVANIA**

| |
|---|
| This endorsement modifies insurance provided under the following:<br><br>**PERSONAL LIABILITY** |

**LOSS ASSESSMENT COVERAGE**

It is agreed:

**ADDITIONAL COVERAGES** is amended with the addition of the following:

**Loss Assessment**
We will pay up to $1000 (unless a higher value is shown on the declarations) for your share of loss assessment charged during the policy period against you by a corporation or association of property owners, when the assessment is made as a result of:
1. "Bodily injury" or "property damage" not excluded under this policy; or
2. Liability for an act of a director, officer or trustee in the capacity as a director, officer or trustee, provided:
   a. The director, officer or trustee is elected by the members of a corporation or association of property owners; and
   b. The directors, officer or trustee serves without deriving any income from the exercise of duties, which are solely on behalf of a corporation, or association of property owners.

This coverage applies only to loss assessments charged against you as owner or tenant of the "residence premises".
We do not cover loss assessments charged against you or a corporation or association of property owners by any governmental body.

All other terms and conditions of this policy remain unchanged.  This endorsement is a part of your policy and takes effect on the effective date of your policy unless another effective date is shown.

DL 113 (07-11)                                                         Page 1 of 1

## UNITED STATES LIABILITY INSURANCE GROUP
## WAYNE, PENNSYLVANIA

This endorsement modifies insurance provided under the following:

### PERSONAL LIABILITY

### LIMITATION OF COVERAGE TO DESIGNATED PREMISES

In consideration of the premium charged, only the premises shown below are included in the definition of "insured location".

This insurance applies only to "bodily injury", "property damage", "personal injury" (if applicable) and Medical Payments to Others arising out of the ownership, maintenance or use of the premises shown in the Schedule below.

**Schedule**

Premises:

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations)

All other terms and conditions of this policy remain unchanged.  This endorsement is a part of your policy and takes effect on the effective date of your policy unless another effective date is shown.

## UNITED STATES LIABILITY INSURANCE GROUP
## WAYNE, PENNSYLVANIA

This endorsement modifies insurance provided under the following:

**PERSONAL LIABILITY**

## ABSOLUTE EARTH MOVEMENT EXCLUSION

It is agreed:

This policy does not apply to "bodily injury", "property damage" or "personal injury" caused by, resulting from, attributable or contributed to, or aggravated by earth movement, whether combined with water or not, including but not limited to earthquakes, landslides, subsidence, mudflow, sinkhole, erosion, or the sinking, rising, shifting, expanding or contracting of earth or soil.
This exclusion applies regardless of the cause or causes of the earth movement.

All other terms and conditions of this policy remain unchanged.  This endorsement is a part of your policy and takes effect on the effective date of your policy unless another effective date is shown.

DL 116 (07-11)                                                        Page 1 of 1

| This endorsement modifies insurance provided under the following: |
|:---:|
| **PERSONAL LIABILITY** |

## Absolute Exclusion For Pollution, Organic Pathogen, Silica, Asbestos And Lead With A Hostile Fire Exception

It is agreed:

**EXCLUSIONS, E. Coverage L – Personal Liability And Coverage M – Medical Payments To Others** is amended with the addition of the following:

**Pollution, Organic Pathogen, Silica, Asbestos and Lead**

1. "Bodily injury" or "property damage"; or

2. Diminishing or lessening in value of property or for damages from the taking, use or acquisition or interference with the rights of others in property or air space; or

3. Loss, cost or expense, including but not limited to payment for investigation or defense, fines and penalties, arising out of any governmental or any private party action, that an insured or any other party test for, monitor, clean up, remove, contain, mitigate, treat, detoxify or neutralize or in any way respond to or assess the actual or alleged effects of "pollutants", "organic pathogens", "silica", asbestos, or lead;

arising directly, indirectly, in concurrence with or in any sequence out of the actual, alleged or threatened presence of or exposure to, ingestion, inhalation, absorption, contact with discharge, dispersal, seepage, release or escape of "pollutants", "organic pathogens", "silica", asbestos, or lead, whether or not any of the foregoing are (1) sudden, accidental or gradual in nature; (2) intentional; or (3) expected or intended from the standpoint of the insured.

This exclusion applies even if the "pollutant", "organic pathogen", "silica", asbestos, or lead has a function in, or is used by you in your business, operations, premises, site or location.

This exclusion does not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire" unless "hostile fire" occurred or originated:

a. At any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste; or

b. At any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to, or assess the effects of, "pollutants".

This exclusion does not apply to "bodily injury" or "property damage" arising from the consumption of food products intended for human consumption.

"Pollutants" mean[s] any solid, liquid, gaseous, bacterial, fungal, electromagnetic, thermal or other substance that can be toxic or hazardous, cause irritation to animals or persons and/or cause contamination to property and the environment including smoke, vapor, soot, fumes, acids, alkalis, chemicals, toxic materials, "volatile organic

compound" and gases therefrom, radon, combustion byproducts and waste. Specific examples identified as pollutants include, but are not limited to, diesel, kerosene, and other fuel oils . . . carbon monoxide, and other exhaust gases . . . mineral spirits, and other solvents . . . tetrachloroethylene, perchloroethylene (PERC), trichloroethylene (TCE), methylene chloroform, and other dry cleaning chemicals . . . chlorofluorocarbons, chlorinated hydrocarbons, adhesives, pesticides, insecticides . . . and all substances specifically listed, identified, or described by one or more of the following references: **Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA) Priority List Hazardous Substances** (1997 and all subsequent editions), **Agency for Toxic Substances And Disease Registry ToxFAQs™**, and/or **U.S. Environmental Protection Agency EMCI Chemical References Complete Index**.

"Silica" means silica in any form and any of its derivatives, including but not limited to silica dust, silicon dioxide, crystalline silica, quartz, or non-crystalline (amorphous) silica.

"Volatile organic compound" means any compound which discharges organic gases as it decomposes or evaporates, examples of which include but are not limited to formaldehyde, pesticides, adhesives, construction materials made with organic chemicals, solvents, paint, varnish and cleaning products.

"Waste" means any property intended to be disposed, recycled, reused or reclaimed by the owner or user thereof.

"Organic pathogen" means any organic irritant or contaminant, including but not limited to mold, fungus, bacteria or virus, including but not limited to their byproduct such as mycotoxin, mildew, or biogenic aerosol.

"Hostile fire" means a fire which becomes uncontrollable or breaks out from where it was intended to be.

All other terms and conditions of this policy remain unchanged.  This endorsement is a part of your policy and takes effect on the effective date of your policy unless another effective date is shown.

# UNITED STATES LIABILITY INSURANCE GROUP
## WAYNE, PENNSYLVANIA

This endorsement modifies insurance provided under the following:

### PERSONAL LIABILITY

## Punitive Damage Exclusion

It is agreed:

This policy does not insure against punitive or exemplary damages, whether in a separate claim or as a part of another claim, including but not limited to the cost of defense, arising from a claim for punitive or exemplary damages.

If a suit is brought against the "insured" or persons insured hereunder and falls within the coverage provided by this policy, seeking both compensatory damages (damages for economic loss and pain and suffering) and punitive or exemplary damages (damages as a means of punishment), no coverage shall be provided by the policy for any cost, interest, costs of defense, attorney or legal fees of any type or damages attributable to punitive or exemplary damages.

All other terms and conditions of this policy remain unchanged.  This endorsement is a part of your policy and takes effect on the effective date of your policy unless another effective date is shown.

# UNITED STATES LIABILITY INSURANCE GROUP
## WAYNE, PENNSYLVANIA

This endorsement modifies insurance provided under the following:

**PERSONAL LIABILITY**

## Trampoline Or Rebounding Device Exclusion

It is agreed:

This insurance does not apply to "bodily injury," "property damage" or "personal injury" arising out of the ownership, maintenance, use or existence of any trampoline or similar rebounding device.

All other terms and conditions of this policy remain unchanged.  This endorsement is a part of your policy and takes effect on the effective date of your policy unless another effective date is shown.

DL 122 (02-13)                                                                                                    Page 1 of 1

| This endorsement modifies insurance provided under the following: |
|---|
| **PERSONAL LIABILITY** |

## Personal Injury

### DEFINITIONS

The following definitions are added:

"Personal injury" means injury arising out of one or more of the following offenses, but only if the offense was committed during the policy period:

1. False arrest, detention or imprisonment;

2. Malicious prosecution;

3. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

4. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

5. Oral or written publication of material that violates a person's right of privacy.

"Molestation or Abuse" means:

- sexual molestation;
- unlawful touching;
- corporal punishment; and
- physical and/or mental abuse of any person;

including, but not limited to, wrongful detention or imprisonment or intentional infliction of emotional distress.

### LIABILITY COVERAGES

**A. Coverage L – Personal Liability**

The following is added to **Coverage L – Personal Liability**:

**Personal Injury Coverage**

If a claim is made or suit is brought against an "insured" for damages resulting from an offense, defined under "personal injury", to which this coverage applies, we will:

1. Pay up to our limit of liability for the damages for which an "insured" is legally liable. Damages include prejudgement interest awarded against an "insured"; and

2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when our limit of liability for the offense has been exhausted by payment of a judgment or settlement.

**EXCLUSIONS**

With respect to the coverage provided by this endorsement, the exclusions under **E. Coverage L – Personal Liability And Coverage M – Medical Payments To Others** are deleted and replaced by the following:

This insurance does not apply to:

**1.** "Personal Injury":

    **a.** Caused by or at the direction of an "insured" with the knowledge that the act would violate the rights of another and would inflict "personal injury".

    **b.** Arising out of oral or written publication of material, if done by or at the direction of an "insured" with knowledge of its falsity;

    **c.** Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

    **d.** Arising out of a criminal act committed by or at the direction of an "insured";

    **e.** Arising out of liability assumed by an "insured" under any contract or agreement except any indemnity obligation assumed by an "insured" under a written contract directly relating to the ownership maintenance or use of the premises;

    **f.** Sustained by any person as a result of an offense directly or indirectly related to the employment of this person by an "insured";

    **g.** Arising out of or in connection with a "business" conducted from an "insured location" or engaged in by an "insured", whether or not the "business" is owned or operated by an "insured" or employs an "insured". This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstances, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business";

    This exclusion does not apply to:

        **(1)** The rental or holding for rental of an "insured location";

            **(a)** On an occasional basis if used only as a residence;

            **(b)** In part for use only as a residence ,unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

            **(c)** In part, as an office, school, studio or private garage; and

        **(2)** An "insured" under the age of 21 years involved in a part-time or occasional, self employed "business" with no employees.

    **h.** Arising out of civic or public activities performed for pay by an "insured";

    **i.** To you or an "insured" as defined under Definition **B. 5.a. or b.;** This exclusion also applies to any claim made or suit brought against you or an "insured":

        **(1)** To repay; or

        **(2)** Share damages with; another person who may be obligated to pay damages because of "personal injury" to an "insured"; or

    **j.** Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants; at any time. Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot,

fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**k.** Arising out of or resulting directly or indirectly from or concurrent with any alleged, threatened or actual "molestation or abuse" including but not limited to your actual or alleged negligence or other wrongdoing with respect to:

    **(1)** The actual or threatened "molestation or abuse" by anyone while in the care, custody or control of any insured, or

    **(2)** Hiring, placement, employment, training, supervision or retention of a person for whom any insured is or ever was legally responsible, or

    **(3)** Investigation or reporting or the failure to investigate or report any "molestation or abuse" to the proper authorities, or the failure to protect any person while that person was in any insured's care, custody or control.

**2.** Any loss, cost or expense arising out of any:

    **a.** Request, demand or order that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants or;

    **b.** Claim or suit by or on behalf of governmental authority for damages because of testing for, monitoring, clean up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

## CONDITIONS

With respect to the coverage provided by this endorsement, Condition **I. Policy Period** does not apply and Conditions **A. Limit Of Liability, B. Severability Of Insurance** and **C. Duties After "Occurrence",** are deleted and replaced by the following:

### A. Limit Of Liability

Our total liability under "Personal Injury" Coverage for all damages resulting from any one offense will not be more than the limit of liability shown in the Declarations for Coverage **L.** This limit is the same regardless of the number of "insureds", claims made or suits brought.

### B. Severability Of Insurance

This insurance applies separately to each "insured". This condition will not increase our limit of liability for any one offense.

### C. Duties After "Occurrence"

In the event of loss from a covered offense, you or another "insured" will perform the following duties that apply. We have no duty to provide coverage under this policy if your failure to comply with the following duties is prejudicial to us. You will help us by seeing that these duties are performed.

**1.** Give written notice to us or our agent as soon as is practical, which sets forth:

    **a.** The identity of the policy and "named insured";

    **b.** Reasonably available information on the time, place and circumstances of the offense; and

    **c.** Names and addresses of any claimants and witnesses;

**2.** Cooperate with us in the investigation, settlement or defense of any claim or suit;

3. Promptly forward to us every notice, demand, summons or other process relating to the offense;

4. At our request, help us:

   a. To make settlement;

   b. To enforce any right of contribution or indemnity against any person or organization who may be liable to an "insured";

   c. With the conduct of suits and attend hearings and trials; and

   d. To secure and give evidence and obtain the attendance of witnesses;

5. No "insured" shall, except at such "insured's" own cost

   • voluntarily make payment;

   • assume obligation or incur expense;

   other than for first aid to others at the time of the "personal injury.

All other terms are the same.  This endorsement is a part of your policy.  It takes effect on the effective date of your policy.

PERSONAL LIABILITY
DL 01 09 08 04

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SPECIAL PROVISIONS – FLORIDA

**PERSONAL LIABILITY ADDITIONAL POLICY CONDITIONS**

**E. Cancellation**

Paragraphs **2.**, **3.** and **4.** are deleted and replaced by the following:

**2.** When this policy has been in effect for 90 days or less, we may cancel immediately if there has been a material misstatement or misrepresentation or failure to comply with underwriting requirements.

**3.** We may also cancel this policy subject to the following provisions. A written cancellation notice, together with the specific reasons for cancellation, will be delivered to you, or mailed to you at your mailing address shown in the Declarations.

Proof of mailing will be sufficient proof of notice.

**a.** When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

**b.** When this policy has been in effect for 90 days or less, we may cancel for any reason. Except as provided in Paragraph **2.** above, we will let you know of our action at least 20 days before the date cancellation takes effect.

**c.** When this policy has been in effect for more than 90 days, we may cancel:

**(1)** If there has been a material misstatement;

**(2)** If the risk has changed substantially since the policy was issued;

**(3)** In the event of failure to comply with underwriting requirements established by us within 90 days of the effective date of coverage; or

**(4)** If the cancellation is for all insureds under policies of this type for a given class of insureds.

This can be done by letting you know at least 90 days before the date cancellation takes effect.

**4.** When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded. When the policy is cancelled, the return premium will be refunded pro rata.

**5.** If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

The following conditions are added:

**F. Nonrenewal**

We may elect not to renew this policy. We may do so by delivering to you, or mailing to you at your mailing address shown in the Declarations, written notice, together with the specific reasons for nonrenewal, at least 90 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

**G. Renewal Notification**

If we elect to renew this policy, we will let you know, in writing:

**1.** Of our decision to renew this policy; and

**2.** The amount of renewal premium payable to us.

This notice will be delivered to you or mailed to you at your mailing address shown in the Declarations at least 45 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

All other provisions of this policy apply.

 © ISO Properties, Inc., 2003

# PERSONAL LIABILITY

**AGREEMENT**

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

**DEFINITIONS**

A. In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household. "We", "us" and "our" refer to the Company providing this insurance.

B. In addition, certain words and phrases are defined as follows:

1. "Aircraft Liability", "Hovercraft Liability", "Motor Vehicle Liability" and "Watercraft Liability", subject to the provisions in **b.** below, mean the following:

   a. Liability for "bodily injury" or "property damage" arising out of the:

      (1) Ownership of such vehicle or craft by an "insured";

      (2) Maintenance, occupancy, operation, use, loading or unloading of such vehicle or craft by any person;

      (3) Entrustment of such vehicle or craft by an "insured" to any person;

      (4) Failure to supervise or negligent supervision of any person involving such vehicle or craft by an "insured"; or

      (5) Vicarious liability, whether or not imposed by law, for the actions of a child or minor involving such vehicle or craft.

   b. For the purpose of this definition:

      (1) Aircraft means any contrivance used or designed for flight except model or hobby aircraft not used or designed to carry people or cargo;

      (2) Hovercraft means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles;

      (3) Watercraft means a craft principally designed to be propelled on or in water by wind, engine power or electric motor; and

      (4) Motor vehicle means a "motor vehicle" as defined in **7.** below.

2. "Bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death that results.

3. "Business" means:

   a. A trade, profession or occupation engaged in on a full-time, part-time or occasional basis; or

   b. Any other activity engaged in for money or other compensation, except the following:

      (1) One or more activities, not described in (2) through (4) below, for which no "insured" receives more than $2,000 in total compensation for the 12 months before the beginning of the policy period;

      (2) Volunteer activities for which no money is received other than payment for expenses incurred to perform the activity;

      (3) Providing home day care services for which no compensation is received, other than the mutual exchange of such services; or

      (4) The rendering of home day care services to a relative of an "insured".

4. "Employee" means an employee of an "insured", or an employee leased to an "insured" by a labor leasing firm under an agreement between an "insured" and the labor leasing firm, whose duties are other than those performed by a "residence employee".

5. "Insured" means:

   a. You and residents of your household who are:

      (1) Your relatives; or

      (2) Other persons under the age of 21 and in the care of any person named above;

   b. A student enrolled in school full time, as defined by the school, who was a resident of your household before moving out to attend school, provided the student is under the age of:

      (1) 24 and your relative; or

      (2) 21 and in your care or the care of a person described in **a.(1)** above;

© ISO Properties, Inc., 2002

c. With respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person included in **a.** or **b.** above. "Insured" does not mean a person or organization using or having custody of these animals or watercraft in the course of any "business" or without consent of the owner; or

d. With respect to a "motor vehicle" to which this policy applies:

(1) Persons while engaged in your employ or that of any person included in **a.** or **b.** above; or

(2) Other persons using the vehicle on an "insured location" with your consent.

Throughout this policy, when the word an immediately precedes the word "insured", the words an "insured" together mean one or more "insureds".

6. "Insured location" means:

a. The "residence premises";

b. The part of other premises, other structures and grounds used by you as a residence; and

(1) Which is shown in the Declarations; or

(2) Which is acquired by you during the policy period for your use as a residence;

c. Any premises used by you in connection with a premises described in **a.** and **b.** above;

d. Any part of a premises:

(1) Not owned by an "insured"; and

(2) Where an "insured" is temporarily residing;

e. Vacant land, other than farm land, owned by or rented to an "insured";

f. Land owned by or rented to an "insured" on which a one, two, three or four family dwelling is being built as a residence for an "insured";

g. Individual or family cemetery plots or burial vaults of an "insured"; or

h. Any part of a premises occasionally rented to an "insured" for other than "business" use.

7. "Motor vehicle" means:

a. A self-propelled land or amphibious vehicle; or

b. Any trailer or semitrailer which is being carried on, towed by or hitched for towing by a vehicle described in **a.** above.

8. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

a. "Bodily injury"; or

b. "Property damage".

9. "Property damage" means physical injury to, destruction of, or loss of use of tangible property.

10. "Residence employee" means:

a. An employee of an "insured", or an employee leased to an "insured" by a labor leasing firm, under an agreement between an "insured" and the labor leasing firm, whose duties are related to the maintenance or use of the "residence premises", including household or domestic services; or

b. One who performs similar duties elsewhere not related to the "business" of an "insured".

A "residence employee" does not include a temporary employee who is furnished to an "insured" to substitute for a permanent "residence employee" on leave or to meet seasonal or short-term workload conditions.

11. "Residence premises" means:

a. The one family dwelling where you reside;

b. The two, three or four family dwelling where you reside in at least one of the family units; or

c. That part of any other building where you reside;

and which is shown as the "residence premises" in the Declarations.

"Residence premises" also includes other structures and grounds at that location.

© ISO Properties, Inc., 2002     DL 24 01 12 02

## LIABILITY COVERAGES

### A. Coverage L – Personal Liability

If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:

1. Pay up to our limit of liability for the damages for which an "insured" is legally liable. Damages include prejudgment interest awarded against an "insured"; and

2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when our limit of liability for the "occurrence" has been exhausted by payment of a judgment or settlement.

### B. Coverage M – Medical Payments To Others

We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing "bodily injury". Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or regular residents of your household except "residence employees". As to others, this coverage applies only:

1. To a person on the "insured location" with the permission of an "insured"; or

2. To a person off the "insured location", if the "bodily injury":

   a. Arises out of a condition on the "insured location" or the ways immediately adjoining;

   b. Is caused by the activities of an "insured";

   c. Is caused by a "residence employee" in the course of the "residence employee's" employment by an "insured"; or

   d. Is caused by an animal owned by or in the care of an "insured".

## EXCLUSIONS

### A. "Motor Vehicle Liability"

1. Coverages L and M do not apply to any "motor vehicle liability" if, at the time and place of an "occurrence", the involved "motor vehicle":

   a. Is registered for use on public roads or property;

   b. Is not registered for use on public roads or property, but such registration is required by a law, or regulation issued by a government agency, for it to be used at the place of the "occurrence"; or

   c. Is being:

      (1) Operated in, or practicing for, any prearranged or organized race, speed contest or other competition;

      (2) Rented to others;

      (3) Used to carry persons or cargo for a charge; or

      (4) Used for any "business" purpose except for a motorized golf cart while on a golfing facility.

2. If Exclusion A.1. does not apply, there is still no coverage for "motor vehicle liability" unless the "motor vehicle" is:

   a. In dead storage on an "insured location";

   b. Used solely to service an "insured's" residence;

   c. Designed to assist the handicapped and, at the time of an "occurrence", it is:

      (1) Being used to assist a handicapped person; or

      (2) Parked on an "insured location";

   d. Designed for recreational use off public roads and:

      (1) Not owned by an "insured"; or

      (2) Owned by an "insured" provided the "occurrence" takes place on an "insured location" as defined in Definitions B. 6.a., b., d., e. or h.; or

   e. A motorized golf cart that is owned by an "insured", designed to carry up to 4 persons, not built or modified after manufacture to exceed a speed of 25 miles per hour on level ground and, at the time of an "occurrence", is within the legal boundaries of:

      (1) A golfing facility and is parked or stored there, or being used by an "insured" to:

         (a) Play the game of golf or for other recreational or leisure activity allowed by the facility;

         (b) Travel to or from an area where "motor vehicles" or golf carts are parked or stored; or

         (c) Cross public roads at designated points to access other parts of the golfing facility; or

      (2) A private residential community, including its public roads upon which a motorized golf cart can legally travel, which is subject to the authority of a property owners association and contains an "insured's" residence.

**B. "Watercraft Liability"**

1. Coverages L and M do not apply to any "watercraft liability" if, at the time of an "occurrence", the involved watercraft is being:

   a. Operated in, or practicing for, any prearranged or organized race, speed contest or other competition. This exclusion does not apply to a sailing vessel or a predicted log cruise;

   b. Rented to others;

   c. Used to carry persons or cargo for a charge; or

   d. Used for any "business" purpose.

2. If Exclusion **B.1.** does not apply, there is still no coverage for "watercraft liability" unless, at the time of the "occurrence", the watercraft:

   a. Is stored;

   b. Is a sailing vessel, with or without auxiliary power, that is:

      (1) Less than 26 feet in overall length; or

      (2) 26 feet or more in overall length and not owned by or rented to an "insured"; or

   c. Is not a sailing vessel and is powered by:

      (1) An inboard or inboard-outdrive engine or motor, including those that power a water jet pump, of:

         (a) 50 horsepower or less and not owned by an "insured"; or

         (b) More than 50 horsepower and not owned by or rented to an "insured"; or

      (2) One or more outboard engines or motors with:

         (a) 25 total horsepower or less;

         (b) More than 25 horsepower if the outboard engine or motor is not owned by an "insured";

         (c) More than 25 horsepower if the outboard engine or motor is owned by an "insured" who acquired it during the policy period; or

         (d) More than 25 horsepower if the outboard engine or motor is owned by an "insured" who acquired it before the policy period, but only if:

            (i) You declare them at policy inception; or

            (ii) Your intent to insure them is reported to us in writing within 45 days after you acquire them.

         The coverages in **(c)** and **(d)** above apply for the policy period.

         Horsepower means the maximum power rating assigned to the engine or motor by the manufacturer.

**C. "Aircraft Liability"**

This policy does not cover "aircraft liability".

**D. "Hovercraft Liability"**

This policy does not cover "hovercraft liability".

**E. Coverage L – Personal Liability And Coverage M – Medical Payments To Others**

Coverages L and M do not apply to the following:

1. **Expected Or Intended Injury**

   "Bodily injury" or "property damage" which is expected or intended by an "insured" even if the resulting "bodily injury" or "property damage":

   a. Is of a different kind, quality or degree than initially expected or intended; or

   b. Is sustained by a different person, entity, real or personal property, than initially expected or intended.

   However, this Exclusion **E.1.** does not apply to "bodily injury" resulting from the use of reasonable force by an "insured" to protect persons or property;

2. **"Business"**

   a. "Bodily injury" or "property damage" arising out of or in connection with a "business" conducted from an "insured location" or engaged in by an "insured", whether or not the "business" is owned or operated by an "insured" or employs an "insured".

      This Exclusion **E.2.** applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business".

   b. This Exclusion **E.2.** does not apply to:

      (1) The rental or holding for rental of an "insured location";

         (a) On an occasional basis if used only as a residence;

© ISO Properties, Inc., 2002

(b) In part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

(c) In part, as an office, school, studio or private garage; and

(2) An "insured" under the age of 21 years involved in a part-time or occasional, self-employed "business" with no employees;

**3. Professional Services**

"Bodily injury" or "property damage" arising out of the rendering of or failure to render professional services;

**4. "Insured's" Premises Not An "Insured Location"**

"Bodily injury" or "property damage" arising out of a premises:

a. Owned by an "insured";

b. Rented to an "insured"; or

c. Rented to others by an "insured";

that is not an "insured location";

**5. War**

"Bodily injury" or "property damage" caused directly or indirectly by war, including the following and any consequence of any of the following:

a. Undeclared war, civil war, insurrection, rebellion or revolution;

b. Warlike act by a military force or military personnel; or

c. Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental;

**6. Communicable Disease**

"Bodily injury" or "property damage" which arises out of the transmission of a communicable disease by an "insured";

**7. Sexual Molestation, Corporal Punishment Or Physical Or Mental Abuse**

"Bodily injury" or "property damage" arising out of sexual molestation, corporal punishment or physical or mental abuse; or

**8. Controlled Substance**

"Bodily injury" or "property damage" arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Controlled Substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician.

Exclusions **A.** "Motor Vehicle Liability", **B.** "Watercraft Liability", **C.** "Aircraft Liability", **D.** "Hovercraft Liability" and **E.4.** "Insured's" Premises Not An "Insured Location" do not apply to "bodily injury" to a "residence employee" arising out of and in the course of the "residence employee's" employment by an "insured".

**F. Coverage L – Personal Liability**

Coverage L does not apply to:

**1. Liability:**

a. For any loss assessment charged against you as a member of an association, corporation or community of property owners;

b. Under any contract or agreement entered into by an "insured". However, this exclusion does not apply to written contracts:

(1) That directly relate to the ownership, maintenance or use of an "insured location"; or

(2) Where the liability of others is assumed by you prior to an "occurrence";

unless excluded in **a.** above or elsewhere in this policy;

**2.** "Property damage" to property owned by an "insured". This includes costs or expenses incurred by an "insured" or others to repair, replace, enhance, restore or maintain such property to prevent injury to a person or damage to property of others, whether on or away from an "insured location";

**3.** "Property damage" to property rented to, occupied or used by or in the care of an "insured". This exclusion does not apply to "property damage" caused by fire, smoke or explosion;

 © ISO Properties, Inc., 2002

4. "Bodily injury" to any person eligible to receive any benefits voluntarily provided or required to be provided by an "insured" under any:

   a. Workers' compensation law;

   b. Non-occupational disability law; or

   c. Occupational disease law;

5. "Bodily injury" or "property damage" for which an "insured" under this policy:

   a. Is also an insured under a nuclear energy liability policy issued by the:

      (1) Nuclear Energy Liability Insurance Association;

      (2) Mutual Atomic Energy Liability Underwriters;

      (3) Nuclear Insurance Association of Canada;

      or any of their successors; or

   b. Would be an insured under such a policy but for the exhaustion of its limit of liability; or

6. "Bodily injury" to you or an "insured" as defined under Definitions 5.a. or b.

   This exclusion also applies to any claim made or suit brought against you or an "insured":

   a. To repay; or

   b. Share damages with;

   another person who may be obligated to pay damages because of "bodily injury" to an "insured".

## G. Coverage M – Medical Payments To Others

Coverage M does not apply to "bodily injury":

1. To a "residence employee" if the "bodily injury":

   a. Occurs off the "insured location"; and

   b. Does not arise out of or in the course of the "residence employee's" employment by an "insured";

2. To any person eligible to receive benefits voluntarily provided or required to be provided under any:

   a. Workers' compensation law;

   b. Non-occupational disability law; or

   c. Occupational disease law;

3. From any:

   a. Nuclear reaction;

   b. Nuclear radiation; or

   c. Radioactive contamination;

   all whether controlled or uncontrolled or however caused; or

d. Any consequence of any of these; or

4. To any person, other than a "residence employee" of an "insured", regularly residing on any part of the "insured location".

## ADDITIONAL COVERAGES

We cover the following in addition to the limits of liability:

### A. Claim Expenses

We pay:

1. Expenses we incur and costs taxed against an "insured" in any suit we defend;

2. Premiums on bonds required in a suit we defend, but not for bond amounts more than the Coverage L limit of liability. We need not apply for or furnish any bond;

3. Reasonable expenses incurred by an "insured" at our request, including actual loss of earnings (but not loss of other income) up to $250 per day, for assisting us in the investigation or defense of a claim or suit; and

4. Interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

### B. First Aid Expenses

We will pay expenses for first aid to others incurred by an "insured" for "bodily injury" covered under this policy. We will not pay for first aid to an "insured".

### C. Damage To Property Of Others

1. We will pay, at replacement cost, up to $1,000 per "occurrence" for "property damage" to property of others caused by an "insured".

2. We will not pay for "property damage":

   a. Caused intentionally by an "insured" who is 13 years of age or older;

   b. To property owned by an "insured";

   c. To property owned by or rented to a tenant of an "insured" or a resident in your household; or

   d. Arising out of:

      (1) A "business" engaged in by an "insured";

      (2) Any act or omission in connection with a premises owned, rented or controlled by an "insured", other than the "insured location"; or

© ISO Properties, Inc., 2002
DL 24 01 12 02

**(3)** The ownership, maintenance, occupancy, operation, use, loading or unloading of aircraft, hovercraft, watercraft or "motor vehicles".

This Exclusion **d.(3)** does not apply to a "motor vehicle" that:

**(a)** Is designed for recreational use off public roads;

**(b)** Is not owned by an "insured"; and

**(c)** At the time of the "occurrence", is not required by law, or regulation issued by a government agency, to have been registered for it to be used on public roads or property.

## CONDITIONS

### A. Limit Of Liability

Our total liability under Coverage **L** for all damages resulting from any one "occurrence" will not be more than the Coverage **L** limit of liability shown in the Declarations. This limit is the same regardless of the number of "insureds", claims made or persons injured. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one "occurrence".

Our total liability under Coverage **M** for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the Coverage **M** limit of liability shown in the Declarations.

### B. Severability Of Insurance

This insurance applies separately to each "insured". This condition will not increase our limit of liability for any one "occurrence".

### C. Duties After "Occurrence"

In case of an "occurrence", you or another "insured" will perform the following duties that apply. We have no duty to provide coverage under this policy if your failure to comply with the following duties is prejudicial to us. You will help us by seeing that these duties are performed:

**1.** Give written notice to us or our agent as soon as is practical, which sets forth:

**a.** The identity of the policy and the "named insured" shown in the Declarations;

**b.** Reasonably available information on the time, place and circumstances of the "occurrence"; and

**c.** Names and addresses of any claimants and witnesses;

**2.** Cooperate with us in the investigation, settlement or defense of any claim or suit;

**3.** Promptly forward to us every notice, demand, summons or other process relating to the "occurrence";

**4.** At our request, help us:

**a.** To make settlement;

**b.** To enforce any right of contribution or indemnity against any person or organization who may be liable to an "insured";

**c.** With the conduct of suits and attend hearings and trials; and

**d.** To secure and give evidence and obtain the attendance of witnesses;

**5.** With respect to **C.** Damage To Property Of Others under Additional Coverages, submit to us within 60 days after the loss, a sworn statement of loss and show the damaged property, if in an "insured's" control;

**6.** No "insured" shall, except at such "insured's" own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the "bodily injury".

### D. Duties Of An Injured Person – Coverage M – Medical Payments To Others

**1.** The injured person or someone acting for the injured person will:

**a.** Give us written proof of claim, under oath if required, as soon as is practical; and

**b.** Authorize us to obtain copies of medical reports and records.

**2.** The injured person will submit to a physical exam by a doctor of our choice when and as often as we reasonably require.

### E. Payment Of Claim – Coverage M – Medical Payments To Others

Payment under this coverage is not an admission of liability by an "insured" or us.

### F. Suit Against Us

**1.** No action can be brought against us unless there has been full compliance with all of the terms under this policy.

**2.** No one will have the right to join us as a party to any action against an "insured".

**3.** Also, no action with respect to Coverage **L** can be brought against us until the obligation of such "insured" has been determined by final judgment or agreement signed by us.

**G. Bankruptcy Of An "Insured"**

Bankruptcy or insolvency of an "insured" will not relieve us of our obligations under this policy.

**H. Other Insurance**

This insurance is excess over other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

**I. Policy Period**

This policy applies only to "bodily injury" or "property damage" which occurs during the policy period.

**J. Subrogation**

An "insured" may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, an "insured" must sign and deliver all related papers and cooperate with us.

Subrogation does not apply to Coverage **M** or Paragraph **C.** Damage To Property Of Others under Additional Coverages.

**K. Concealment Or Fraud**

We do not provide coverage to an "insured" who, whether before or after a loss, has:

**1.** Intentionally concealed or misrepresented any material fact or circumstance;

**2.** Engaged in fraudulent conduct; or

**3.** Made false statements;

relating to this insurance.

PERSONAL LIABILITY
DL 24 02 12 02

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# PERSONAL LIABILITY
# ADDITIONAL POLICY CONDITIONS

The following conditions are added to this policy:

### A. Liberalization Clause

If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state, provided that this implementation date falls within 60 days prior to or during the policy period stated in the Declarations.

This Liberalization Clause does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:

1. A subsequent edition of this policy; or

2. An amendatory endorsement.

### B. Waiver Or Change Of Policy Provisions

A waiver or change of a provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination will not waive any of our rights.

### C. Assignment

Assignment of this policy will not be valid unless we give our written consent.

### D. Death

If any person named in the Declarations or the spouse, if a resident of the same household, dies:

1. We insure the legal representative of the deceased but only with respect to the premises and property of the deceased covered under the policy at the time of death;

2. "Insured" includes:

   a. An "insured" who is a member of your household at the time of your death, but only while a resident of the "residence premises;" and

   b. With respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

### E. Cancellation

1. You may cancel this policy at any time by returning it to us or by letting us know in writing of the date cancellation is to take effect.

2. We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations. Proof of mailing will be sufficient proof of notice.

   a. When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

   b. When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you know at least 10 days before the date cancellation takes effect.

   c. When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

      (1) if there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy; or

      (2) if the risk has changed substantially since the policy was issued.

      This can be done by letting you know at least 30 days before the date cancellation takes effect.

   d. When this policy is written for a period of more than one year, we may cancel for any reason at anniversary by letting you know at least 30 days before the date cancellation takes effect.

© ISO Properties, Inc.,  2002

3. When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

4. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

© ISO Properties, Inc.,  2002     DL 24 02 12 02

POLICY NUMBER:

**PERSONAL LIABILITY**
**DL 24 04 12 02**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL RESIDENCE RENTED TO OTHERS
# 1, 2, 3 OR 4 FAMILIES

**SCHEDULE\***

| | |
|---|---|
| Definition **6.** which defines an "Insured location" and the exception to Exclusion **E.2.** "Business" in Paragraph **b.** are extended to include the location(s) listed below. | |
| All other provisions of this policy apply. | |
| **Location** | **Number of Families** |

\*Entries may be left blank if shown elsewhere in this policy for this coverage.

**DL 24 04 12 02**              © ISO Properties, Inc.,  2002              **Page 1 of 1**

**PERSONAL LIABILITY**
**DL 24 16 12 02**

**THIS ENDORSEMENT DOES NOT CONSTITUTE A REDUCTION OF COVERAGE.**

# NO COVERAGE FOR
# HOME DAY CARE BUSINESS

**A.** "Business", as defined in the policy, means:

   **1.** A trade, profession or occupation engaged in on a full time, part-time or occasional basis; or

   **2.** Any other activity engaged in for money or other compensation, except the following:

      **a.** One or more activities:

         **(1)** Not described in **b.** through **d.** below,

         **(2)** For which no "insured" receives more than $2,000 in total compensation for the 12 months before the beginning of the policy period;

      **b.** Volunteer activities for which no money is received other than payment for expenses incurred to perform the activity;

      **c.** Providing home day care services for which no compensation is received, other than the mutual exchange of such services; or

      **d.** The rendering of home day care services to a relative of an "insured".

**B.** If an "insured" regularly provides home day care services to a person or persons other than "insureds" as their trade, profession or occupation, that service is a "business".

**C.** If home day care service is not a given "insured's" trade, profession or occupation but is an activity:

   **1.** That an "insured" engages in for money or other compensation; and

   **2.** From which an "insured" receives more than $2,000 in total/combined compensation from it for the 12 months before the beginning of the policy period,

the home day care service and other activity will be considered a "business".

**D.** With respect to **C.** above home day care service is only an example of an activity engaged in for money that may be a "business". Any single activity or combination of activities:

   **1.** Described in **A.2.** above, and

   **2.** Engaged in for money by a single "insured";

may be considered a "business" if the $2000 threshold is exceeded.

**E.** With respect to **A.** through **D.** above, coverage does not apply with respect to home day care service which is a "business". This policy does not provide coverage because a "business" of an "insured" is excluded under Exclusion **E.2.**

 © ISO Properties, Inc., 2002

**PERSONAL LIABILITY**
**DL 24 84 10 04**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION OF CANINE-RELATED LIABILITY

### SCHEDULE

| Name And Description Of Canine(s): |
| --- |
| Akitas, Alaskan Malamutes, Bull Mastiffs, Presa Canarios, Chow Chows, Doberman Pinchers, German Shepherds, Pit Bull Terriers, American Staffordshire Terriers, Rottweilers, Siberian Huskies, Wolf/Dog hybrids or mixed breeds linked to any of the breeds described in this schedule, or any trained attack or fighting dog |
| Entry may be left blank if shown elsewhere in this policy. |

**EXCLUSIONS**

The following exclusion is added:

**CANINE-RELATED LIABILITY**

Coverages **L** and **M** do not apply to "bodily injury" or "property damage" arising out of direct physical contact with a canine described in the Schedule that is owned by or in the care, custody or control of an "insured".

All other provisions of the policy apply.

PERSONAL LIABILITY
DL 25 09 12 10

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# SPECIAL PROVISIONS – FLORIDA

**EXCLUSIONS**

**E. Coverage L – Personal Liability And Coverage M – Medical Payments To Others**

Paragraph **8.** is replaced by the following:

**8. Controlled Substance**

"Bodily injury" or "property damage" arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance(s) as defined under federal law. Controlled Substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician.

**CONDITIONS**

Paragraph **A. Limit Of Liability** is replaced by the following:

**A. Limit Of Liability**

1. Our total liability under Coverage **L** for all damages resulting from any one "occurrence" will not be more than the Limit Of Liability for Coverage **L** as shown in the Declarations. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one "occurrence".

**2. Sublimit Of Liability**

Subject to Paragraph **1.** above, our total liability under Coverage **L** for damages for which an "insured" is legally liable because of statutorily imposed vicarious parental liability not otherwise excluded is $10,000. This sublimit is within, but does not increase, the Coverage **L** Limit of Liability.

3. The Limit of Liability in **1.** above and sublimit in **2.** above apply regardless of the number of "insureds", claims made or persons injured.

4. Our total liability under Coverage **M** for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the Limit Of Liability for Coverage **M** as shown in the Declarations.

All other provisions of this policy apply.

# INSURANCE

# POLICY

## UNITED STATES LIABILITY INSURANCE GROUP

A STOCK COMPANY

A BERKSHIRE HATHAWAY COMPANY

1190 Devon Park Drive
Wayne, PA 19087-2191
888-523-5545 – USLI.COM

This policy jacket together with the policy declarations, coverage forms and endorsements, if any, complete this policy.

The enclosed declarations designates the issuing company.

Jacket (07-19)

NOT AN OFFICIAL COPY – PUBLIC ACCESS – NOT AN OFFICIAL COPY

## INSURANCE POLICY

# Read your policy carefully!

**In Witness Whereof,** the company has caused this Policy to be executed and attested.  Where required by law, this Policy shall not be valid unless countersigned by a duly authorized representative of the company.

Secretary

President

Jacket (07-19)

**UNITED STATES LIABILITY INSURANCE GROUP**
**WAYNE, PENNSYLVANIA**

This endorsement modifies insurance provided under the following:

**CONDOMINIUM UNIT-OWNERS AND TENANTS COVERAGE FORM**
**CONDOMINIUM UNIT-OWNERS INVESTORS COVERAGE FORM**
**COMPREHENSIVE PERSONAL LIABILITY**
**HOMEOWNERS 6 – UNIT OWNERS FORM**
**DWELLING POLICY**

## CONTRACTOR OR SUB-CONTRACTOR EXCLUSION

This policy does not insure against loss or expense, including but not limited to the cost of defense:

1. arising out of, caused by or resulting from any "operations" performed for any "insured" by any contractor or sub-contractor; or
2. arising out of, caused by or resulting from any acts or omissions of any "insured" in connection with supervision of such "operations"; or
3. arising out of, caused by or resulting from the acts or omissions of any "insured" in the selection, retention or supervision of any contractor or sub-contractor who performs such "operations"; or
4. arising out of any injury, damages or loss sustained by any contractor or sub-contractor; or any employee, "temporary worker", "volunteer worker" or "casual laborer" of any "insured" or contractor or sub-contractor; or the spouse, child, parent, brother, sister or other relative of any employee, "temporary worker", "volunteer worker" or "casual laborer" of any "insured" or contractor or sub-contractor or any obligation of any "insured" to indemnify or contribute with another because of any injury, damage or loss to such person.

This exclusion applies to all claims of and suits brought by any person or organization for injury, damage or loss, including damages for care, loss of services, or any claim under which any "insured" may be liable under any workers' compensation, disability benefits, unemployment compensation or any similar law arising out of or resulting from "operations".

For purposes of this endorsement, the following definitions are added:
"Casual laborer" means any person providing work or materials to any "insured" or contractor or sub-contractor for compensation of any type.
"Employee" includes a "leased worker". "Employee" does not include a "temporary worker".
"Leased worker" means a person leased to any "insured" or contractor or sub-contractor by a labor-leasing firm under an agreement between any "insured" or contractor or sub-contractor and the labor-leasing firm, to perform duties related to the conduct of any "insured" or contractor's or sub-contractor's business. "Leased worker" does not include a "temporary worker".

"Operations" means any interior or exterior renovation, new construction, rehabilitation, moving of structures, demolition and other similar work.

"Temporary worker" means a person who is furnished to any "insured" or contractor or sub-contractor to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

"Volunteer worker" means a person who is not an "employee" of any "insured" or contractor or sub-contractor, and who donates his or her work and acts at the direction of and within the scope of duties determined by any "insured" or contractor or sub-contractor, and is not paid a fee, salary or other compensation by any "insured" or contractor or sub-contractor or anyone else for their work .

All other terms and conditions of this policy remain unchanged.  This endorsement is a part of your policy and takes effect on the effective date of your policy unless another effective date is shown.

PER 106 (11-11)                                                                                        Page 2 of 2

# PRIVACY NOTICE

on behalf of

## UNITED STATES LIABILITY INSURANCE COMPANY
## MOUNT VERNON FIRE INSURANCE COMPANY
## MOUNT VERNON SPECIALTY INSURANCE COMPANY
## U.S. UNDERWRITERS INSURANCE COMPANY

**What information we collect about you?**

We collect non-public personal financial information from you. We may also collect information from other sources such as your prior company and consumer reporting agencies. This information can include prior losses, credit or inspection reports and motor vehicle reports.

**What information about you do we disclose and to whom is it disclosed?**

All companies listed above are under common ownership. All of the non-public personal information collected about you may be shared with all three companies.

We will not otherwise disclose non-public personal information except as permitted by law.

**How do we protect your non-public personal information?**

We have procedures to ensure your information is safe. Information about you is usually available only to the companies listed above. Where the information is made available to others it is only for the services we provide to you. We provide this information to others only to satisfy the purpose in question. Anyone who is given access to your information by us will be informed to protect the information. They are not authorized to use or further disclose your non-public personal information except for the purpose for which such person was given the information.

PrivNotice (11-14)

This page has been intentionally left blank.